ROY NOBLE LEE, Presiding Justice,
for the Court:
G.M.R., Sr. and B.R., parents of a male, minor child, who was born on October 26, 1976, appeal from a judgment of the Chancery Court of Benton County, Honorable L. Glenn Fant, Jr., presiding, granting the adoption of said child to his foster parents. The appellants have assigned three (3) errors, which they contend require reversal of the lower court judgment.
I. — II.
I. THE TRIAL COURT ERRED IN FINDING ABANDONMENT AND DESERTION.
II. THE TRIAL COURT ERRED IN FINDING MORAL UNFITNESS.
Appellees held custody of the male child by virtue of a contract for foster home care with the Lee County Department of Public Welfare. After two years, three months of caring for said child, appellees filed a petition for his adoption on September 16, 1982, on the ground that it was for the best interest of the child to be adopted by them. The Lee County Department of Public Welfare and the natural parents moved the court to dismiss the petition for failure to state a claim upon which relief could be granted. The motion was sustained, and on December 17, 1982, appellees filed an amended petition alleging that the natural parents of the child are mentally, morally or otherwise unfit to rear and train the child and that the child had been neglected and abused and had not been given proper physical and emotional care (abandonment). After a hearing on the petition and answers, the lower court entered judgment terminating the parental rights of the natural parents on the grounds of abandonment and desertion and for the reason that the natural parents were mentally, or morally, or otherwise unfit to rear and train the child. Adoption of the child by the foster parents was granted.
The record reflects, and the chancellor found, that the child was originally taken from his natural parents by the Lee County Department of Public Welfare on July 17, 1979, because of the father beating his wife and drinking alcoholic beverages. The child was returned to them a month later and there was no further contact between the Welfare Department and the parents until June, 1980.
In May or June of 1980, both parents were arrested on criminal charges and convicted. The child was taken away from them again and placed with the foster parents, appellees, June 24, 1980. The chancellor found that each of the parents has two felony convictions, viz, the father (1) conspiracy to sell narcotics, and (2) grand larceny of cattle; the mother (1) impersonation and (2) insurance fraud. The chancellor held that the parents had not rehabilitated themselves after those convictions and sentences following. He distinguished the case sub judice in that respect from Mayfield v. Braund, 217 Miss. 514, 64 So.2d 713 (1953), where a child was originally taken away from his father on ac *500 count of moral unfitness, viz, being sentenced to prison for ten years on a robbery charge, and the Court held that the father had absolved himself for his unfitness and had become a rehabilitated man.
The chancellor considered the evidence and testimony in the case sub judice and particularly mentioned the testimony of the natural mother and seven (7) witnesses in making his finding of fact. Commenting upon the testimony of Dr. Roy Darby, a clinical psychologist, and Miss Cathy Jordan, a social worker of Benton County, Mississippi, the chancellor found:
Dr. Roy Darby, Clinical Psychologist, testified that G was of average intelligence but was “terrifically disturbed; that while he had no brain disease, he was in psychotic process and had cognitive difficulties, was “deeply frightened” and “very difficult to treat”. That he was a case requiring intense long-term psychotherapy.
Miss Cathy Jordan, a Social Worker of Benton County, Mississippi, testified, substantially, to the same effect. When he was first placed in the S. home, G. was very pale and seemed to be undernourished. He had violent dreams. He was scared, irritable, and anxious. He did not like to be left alone at any time; he could not go out of doors by himself.
There was no dissent among any witness who saw G. at the time in question.
Dr. Darby, accepted as an expert witness, testified that the condition of G. was the “result of some very serious deficits in his relation with people, very traumatic events as well as deficits.” He explained this by saying certainly, “abuse and neglect contributed to his problems”.
The picture of this emaciated, cowering child of four years of age is a mirror in which his home life is reflected. It is without dispute. It cannot be said to reflect a home life where both parents were both mentally and morally fit.
Mississippi Code Annotated § 93-15-103(3)(a) states in part:
Grounds for termination of parental rights shall be based on one or more of the following factors: (a) a parent has deserted without means of identification or abandoned and made no contact with the child under the age of three (3) for six (6) months or a child three (3) years or older for a period of one (1) year....
Finding abandonment and desertion, the chancellor did not proceed under the above statute, but relied upon constructive desertion. Following Mississippi Code Annotated § 93-15-109 (1972), this Court has held that the standard of proof in any action for termination of parental rights set forth in Chapter 15, Termination of Rights of Unfit Parents, the chancellor must be satisfied by all the evidence that the proof is clear and convincing that the grounds for termination are present. This likewise applies to any action for the termination of parental rights and adoption by other persons. Natural Father v. United Methodist Children’s Home, 418 So.2d 807 (Miss.1982); Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).
We find it unnecessary to address further the assignment of error relating to abandonment and desertion of the child, since we are of the opinion that the chancellor was not manifestly wrong in finding by clear and convincing evidence that the natural parents were morally and mentally unfit to rear and train the child, and that parental rights should be terminated because of such conditions. We hold that in proper cases, where the proof is clear and convincing, there may be constructive abandonment and desertion.
Appellants had twins approximately two years older than the male child involved here. Those children are still in their custody, and appellants contend that, since they are fit parents to have the custody of the twins, likewise they should be deemed fit to have the custody of the younger male child. We answer that argument by noting the twins are not involved in this adoption proceeding, and the proof as to their situation is not before us. Therefore, Reyer v. Harrison Co. Dept. of *501 Public Welfare, 404 So.2d 1023 (Miss.1981) and De La Olivia v. Lowndes Co. Dept. of Public Welfare, 423 So.2d 1328 (Miss.1983), are not authority for such position.
In his finding of fact as to the best interest of the child for termination of the parental rights of his natural parents and for the adoption, the chancellor said:
There is no question in the evidence of the suitability of the home of the foster parents, the petitioners for adoption. There is no question in the evidence of their devotion to G. or of the fact that they have no now other children. The record overflows with instances of how G. has improved in the two and one-half years he has been there. He has lost most of his cowering fears, his language has been laundered, he has recovered from other symptoms of his psychic trauma, and the Court finds as a fact that in every respect it is to the best interests of the child, G. R., Jr., that he be adopted by the petitioners Mr. and Mrs. S.
A final judgment may be written in keeping with this opinion.
We are of the opinion that the chancellor was not manifestly wrong in his finding that the natural parents of the male child were morally and mentally unfit to rear and train the child, and in holding that it was for the best interest of the child that the parental rights of his natural parents be terminated and that the adoption be granted.
III.
THE TRIAL COURT ERRED IN PERMITTING APPELLEES TO BREACH THEIR FOSTER CARE CONTRACT.
This question appears to have been abandoned by appellants in the lower court. It was not pleaded as a bar to the petition, but was developed on cross-examination of the appellees, that they had executed a contract with the Welfare Department in the usual form which contains a provision to the effect that appellees would not seek adoption without the written consent of the Welfare Department. The question was decided by this Court adversely to appellants in the case of In Re: Adoption of a Minor Child J.C. and N.C. v. Natural Parents, 417 So.2d 529 (Miss.1982).
The judgment of the lower court is affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER, P.J., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.