SMITH, Chief Justice,
for the Court.
¶ 1. This case involves the adoption of a minor child and termination of a natural mother’s parental rights. Todd Holmes,[1] *570 Amy Holmes, and the natural parents of the minor child petitioned the chancery court for an order granting temporary custody without prejudice to the Holmeses, which the chancellor granted. The Holmeses later petitioned the chancellor to adopt the minor child and have the rights of the natural parents terminated. The natural father joined the Holmeses in their request for adoption. The chancellor ordered that the minor child be adopted by the Holmeses and terminated the parental rights of the natural parents. The natural mother now appeals that decision to this Court.
FACTS AND PROCEDURAL HISTORY
¶ 2. Gloria Mathis (Gloria) and Tom Sanders (Tom) conceived a child, K.T.M., who was born out of wedlock on October 23, 1998.[2] The Mississippi Department of Human Services (DHS) filed a complaint to determine paternity against Tom on December 1, 1999, asserting the claim pursuant to Miss. Code Ann. Section 43-19-31 because Mary Mathis (Mary), Gloria’s mother, received Title IV-D child support services. Tom was adjudged to be KT.M.’s father; Mary was awarded legal custody of K.T.M.; and a support order was later issued by the Chancery Court of Pearl River County.
¶ 3. Todd Holmes and Amy Holmes, took K.T.M. into their home around November of 2000. The Holmeses, Gloria, Tom, and K.T.M., by and through Gloria as the natural mother and next friend, petitioned the chancery court to. grant legal custody of K.T.M. to the Holmeses and for other relief. The chancellor entered a temporary order without prejudice, dated March 29, 2001, which awarded legal custody of K.T.M. to the Holmeses, provided Gloria and Tom with reasonable visitation rights, stayed Tom’s child support payments, terminated DHS benefits for K.T.M., and made the Holmeses responsible for K.T.M.’s support and maintenance. This ended DHS’s involvement in the case.
¶ 4. On January 24, 2002, the Holmeses, Tom, and K.T.M., by and through Tom as the natural father, petitioned the Pearl River Chancery Court to terminate the parental rights of both Gloria and Tom and to permit the Holmeses to adopt K.T.M.[3] Gloria filed a cross-petition seeking to hold the Holmeses in contempt, award custody of K.T.M. to her, or in the alternative, modify her visitation schedule, and dismiss the Holmes’s petition to terminate parental rights. The chancellor, upon motion, appointed Anne Marie Parker as guardian ad litem (GAL) and Dr. John Pat Galloway as a specialist for K.T.M. The parties entered a pre-trial order to narrow the issues for trial, which was conducted on March 25, 2004.
¶ 5. The chancellor rendered a memorandum opinion dated May 17, 2004. The chancellor denied Gloria’s cross-petition, finding Gloria had failed to prove by clear and convincing evidence that it was in K.T.M.’s best interest for her custody to be returned to Gloria. He also found that termination of Gloria’s parental rights was justified and that adoption by the Holmes-es was in KT.M.’s best interest, based on his ultimate findings of fact:
(a) Gloria has effectively abandoned the child, and by her conduct demonstrates an attitude of disregard for the *571 best interest and welfare of the child, rendering her .mentally and practically unfit to rear and train the child;
(b) Gloria has not consistently offered to provide reasonably necessary food, clothing, appropriate shelter and treatment for the child;
(c) Gloria demonstrates by her conduct, that she suffers from an emotional illness or mental deficiency, and behavior or conduct disorder which makes her unable or unwilling to provide an adequate permanent home for the child at the present time or in the reasonably near future, all this being based upon an established pattern of behavior;
(d) Todd and Amy are fully qualified and competent, are willing and anxious, and have demonstrated persuasively by their actions that they are fit and proper persons to be placed legally in the position of parents to [K.T.M.], and that the best interest of [K.T.M.] will be served by grant and adjudication of the sought adoption.
The chancellor entered a judgment, which incorporated his memorandum opinion, on June 10, 2004. Gloria filed a post-trial motion seeking, inter alia, that the court find the facts specially and state the conclusions of law separately, amend and make additional findings, grant a new trial, alter or amend the judgment, and relieve her from final judgment. The chancellor denied Gloria’s motion, and she timely filed her notice of appeal.
¶ 6. Gloria raises ten issues on appeal, alleging the chancellor erred manifestly: (1) by assuming jurisdiction when the complaint failed to state a claim upon which relief could be granted; (2) by assuming jurisdiction when an indispensable party was not a party to the action; (3) by assuming jurisdiction over the person; (4) by incorporating into its findings testimony of an expert who failed to meet qualification and investigation prerequisites; (5) by incorporating into its findings testimony of a guardian ad litem who failed to meet qualification and investigation prerequisites; (6) by finding that Gloria had voluntarily relinquished her parental rights; (7) by finding that Gloria had abandoned K.T.M.; (8) by finding that Gloria had failed to support K.T.M.; (9) by failing to consider reasonable alternatives; and (10) by terminating the mother’s parental rights and awarding adoption of her child to appellees. We affirm for the reasons stated below.
DISCUSSION
¶ 7. In cases where parental rights have been terminated, we review the chancellor’s factual findings under the manifest error/substantial credible evidence test. S.N.C. v. J.R.D., 755 So.2d 1077, 1080 (Miss.2000) (citing Vance v. Lincoln County Dep’t of Pub. Welfare, 582 So.2d 414, 417 (Miss.1991)). Under this standard, this Court asks not how it would have decided the case ab initio, but whether there is credible proof to support the chancellor’s findings of fact by clear and convincing evidence. Id. (citing Ethredge v. Yawn, 605 So.2d 761, 764 (Miss.1992)). “However, where on review it is apparent the court below has misapprehended the controlling rules of law or has acted pursuant to a substantially erroneous view of the law, we will proceed de novo and promptly reverse.” Id.
I. Jurisdictional Issues.

A. Failure to state a claim upon which relief could be granted.

¶ 8. Gloria first argues the chancellor erred in assuming jurisdiction of this matter because the Holmes’s petition failed to state a claim upon which relief could be granted. She claims the Uniform Child Custody Jurisdiction Act (UCCJA) does *572 not apply here and that the Holmeses failed to cite any statutory authority for bringing them action. She contends the chancellor deprived her of raising this defense at trial, pursuant to Mississippi Rule of Civil Procedure (M.R.C.P.) 81, by deeming this defense abandoned.
¶ 9. Gloria cites In re Adoption of C.L.B., 812 So.2d 980, 983 (Miss.2002), for her proposition that UCCJA cannot be used to confer jurisdiction in the instant case, noting that “statutes control the manner in which adoptions are conducted, and there is a specific chapter set out in the Mississippi Code which governs and controls adoption proceedings.” Gloria argues the Holmeses pleaded the wrong statute in their complaint and therefore have failed to state a claim for which relief can be granted. M.R.C.P. 8, which governs pleading in a civil action, does not require a party to plead a specific statute, as “subject matter jurisdiction turns on the well-pleaded allegations of the complaint.” Curtis v. Curtis, 574 So.2d 24, 28 (Miss.1990).
¶ 10. The chancellor noted that any deficiencies in the Holmes’s original petition were cured by the entry of the agreed pretrial order. In addressing Gloria’s Rule 12(b)(6) motion at trial, the chancellor stated that “sufficient issues are created by the pleadings together with the pretrial order to avoid and eliminate the necessity for the Court to consider any further that first defense of the 12-B6 motion” and later found that “[t]he pretrial order has been entered with the consent of all counsel and the guardian ad litem. And the motion tO' — ’that is the purpose of a pretrial order. And it does operate to amend an order to comply with that which is set forth in the pretrial order.”
¶11. In G.M.R. v. H.E.S., 489 So.2d 498 (Miss.1986), this Court affirmed the chancellor’s order of adoption and termination of parental rights. In the lower court proceeding, the chancellor had sustained the natural parents’ motion to dismiss for failure to state a claim upon which relief could be granted. Id. at 499. The parties petitioning for adoption filed an amended petition, alleging that the natural parents were “mentally, morally, or otherwise unfit” as the parents and had neglected, abused, and failed to properly care for the child. Id. The chancellor held a hearing and entered a judgment terminating the parental rights on the basis of the grounds stated in the amended petition. Id. The Holmeses argue that, similar to G.M.R., the entry of the pre-trial order, with its allegations that Gloria’s mental problems make her an unfit parent, operates to state a valid claim for the termination of Gloria’s parental rights and for the Holmes’s adoption of K.T.M. In the Holmes’s petition for termination of parental rights and for adoption, they assert that Gloria had not contributed to the support of K.T.M. since her birth, that Gloria failed to avail herself of court-awarded visitation, that Gloria exhibited ongoing behavior that would make it impossible to return the minor child to her care and custody, and that it was in KT.M.’s best interest that they (the Holmeses) adopt K.T.M. Gloria challenged the sufficiency of this pleading on grounds that it did not state a valid claim for relief, yet she later entered into the pre-trial order which added additional contested issues of fact for trial. Among the numerous factual issues added via the pre-trial order were whether Gloria suffered from a severe mental deficiency or mental illness, whether Gloria’s condition makes her unable to assume minimally acceptable care for K.T.M., whether Gloria is capable of changing her behavior, whether Gloria’s conduct is immoral and/or unacceptable for K.T.M.’s custody and/or termination of her parental rights.
*573 ¶ 12. Miss.Code Ann. Section 93-17-7(2) provides that adoption over a parent’s objection is proper if:
(b) The parent has not consistently offered to provide reasonably necessary food, clothing, appropriate shelter and treatment for the child. For purposes of this paragraph, treatment means medical care or other health services provided in accordance with the tenets of a well-recognized religious method of healing with a reasonable, proven record of success.
(c) The parent suffers from a medical or emotional illness, mental deficiency, behavior or conduct disorder, severe physical disability, substance abuse or chemical dependency which makes him unable or unwilling to provide an adequate permanent home for the child at the present time or in the reasonably near future based upon expert opinion or based upon an established pattern of behavior.
(d) Viewed in its entirety, the parent’s past or present conduct, including his criminal convictions, would pose a risk of substantial harm to the physical, mental or emotional health of the child.
(e) The parent has engaged in acts or omissions permitting termination of parental rights under Section 93-15-103.
(f) The enumeration of conduct or omissions in this subsection (2) in no way limits the court’s power to such enumerated conduct or omissions in determining a parent’s abandonment or desertion of the child or unfitness under subsection (1) of this section.
An additional ground for termination , of parental rights, relevant to this case, is found in Miss.Code Aun. Section 93-15-103(e)® (Rev.2004) and states that termination is proper if:
(e) The parent exhibits ongoing behavior which would make it impossible to- return the child to the parent’s care and custody:
(i) Because the parent has a diagnosable condition unlikely to change within a reasonable time such as alcohol or drug addiction, severe mental deficiencies or mental illness, or extreme physical incapacitation, which condition makes the parent unable to assume minimally, acceptable care of the child.
¶ 13. When the Holmes’s petition and agreed pre-trial order, which raised additional issues of fact, are read in connection with the statutory requirements of Miss.Code Ann. Section 93-15-103. and Section 93-17-7, it is readily apparent that the Holmeses have sufficiently pleaded allegations that, if proven, would entitle them to their requested relief. Therefore, the' chancellor did not commit manifest error in finding the pleadings and the pretrial order, taken together, stated a claim for relief sufficient to defeat Gloria’s Rule 12(b)(6) motion.[4]

B. Absence of an indispensable party.

¶ 14. Next, Gloria argues the chancellor committed manifest error in assuming jurisdiction because DHS was an indispensable party to the instant case. She states DHS filed the initial paternity action concerning K.T.M. and was a necessary party to the petition that resulted in the awarding of temporary custody to the Holmeses and termination of Title IV-D child support. DHS was no longer involved when the instant action was filed and was not *574 made a party to the Holmes’s petition to terminate parental rights and for adoption.
¶ 15. Gloria claims Miss.Code Ann. Section 93-17-5 requires that DHS be made a party to the proceedings below. Subsection (1) provides that the parents, adult kin in possession of the child, or guardian ad litem shall be made a party to the proceeding by process or by filing a consent to the adoption. It also requires that certain other persons be made a party to the proceeding via process or consent, specifically:
(i) Those persons having physical custody of such child, except persons having such child as foster parents as a result of placement with them by the Department of Human Services of the State of Mississippi.
(ii) Any person to whom custody of such child may have been awarded by a court of competent jurisdiction of the State of Mississippi.
(iii) The agent of the county Department of Human Services of the State of Mississippi that has placed a child in foster care, either by agreement or by court order.
Miss.Code Ann. § 93 — IT—5(l)(i),(ii), & (iii).
¶ 16. Gloria bases her assertion that DHS is a necessary party to this action on the mention of DHS in subsection (iii) above. We note, however, the statute only requires that DHS be made a party to an adoption proceeding when the child has been placed in foster care by an agreement or by court order. The record does not reflect, and Gloria has provided no proof, that K.T.M. has ever been placed in foster care. Moreover, Gloria has cited no case law which would require us to deem DHS an indispensable party to an adoption proceeding when the subject child is not in foster care. We find DHS was not an indispensable party, thus the chancellor did not manifestly err in proceeding without making DHS a party to the case.

C. Jurisdiction over the person.

¶ 17. Gloria also alleges the chancellor committed manifest error in asserting personal jurisdiction over the case because she received insufficient notice. She claims the summonses were returned incomplete, that there is no record of the proceeding scheduled to be heard on February 19, 2002, for which the Rule 81 summons was issued, and that there is no order continuing the proceeding. Gloria alleges that, due to these failures, this action was terminated in February 2002, again in July 2003 with the attempted continuance, and for a third time with the September and December 2003 attempts to continue the trial. The essence of Gloria’s argument is that because the chancellor did not issue an order continuing the hearing set for February 19, 2002, the action was terminated and “due process requirements and precedent of the Supreme Court require[ ] a new summons and service of process to breathe life into an otherwise dead action.”
¶ 18. As support for her position, Gloria cites Caples v. Caples, 686 So.2d 1071 (Miss.1996). In Capíes, the father of a minor child received a Rule 4 summons in an action brought by the child’s mother (his ex-wife) to modify a child custody order. The father appeared at the hearing and objected to jurisdiction because the couple’s divorce decree and custody order were issued in Texas, and the court continued the action until the Texas court waived jurisdiction. Id. at 1071-72. When the hearing was continued, no order was entered setting a specific date for further proceedings. Id. at 1073. The mother later filed an order waiving jurisdiction in Texas with the Hinds County Chancery Court; the chancery court held a custody modification hearing without the father’s presence; and the chancellor modified the *575 original custody order. Id. at 1072. On appeal, this Court found that because the initial hearing, where none of the case’s merits were discussed, was continued without setting a specific date for further proceedings, the father was without sufficient notice, and the proper procedure was for the mother to issue an additional .Rule 81 summons informing the father of the date and time of the later proceeding. Id. at 1078.
¶ 19. The Holmeses argue that Isom v. Jernigan, 840 So.2d 104 (Miss.2003), rather than Capíes, is applicable to the instant case. Isom involved a contempt petition brought by a father against the child’s mother for failure to comply with visitation orders. The mother’s attorney, rather than the mother herself, was served with the Rule 81 summons, and this Court found this service failed to comply with M.R.C.P. 81(d)(2). Id. at 106. We found in Isom that any of the mother’s challenges to the requirements of Rule 81 were waived by her attorney making a general appearance, failing to challenge jurisdiction or the sufficiency of service of process and introducing testimony on her behalf. Id. at 107.
¶ 20. While Isom and Capíes both involve a failure to strictly comply with Rule 81, we note that Isom has greater factual similarity to the instant case and governs here. In Capíes, the failure to comply with the notice requirements of a Rule 81 summons kept the father from receiving actual notice of a future proceeding that led to an adverse judgment against him. In Isom, the appellant’s counsel had made a general appearance below, failed to object to jurisdiction or service of process at that time, and introduced testimony. In the instant case, Gloria’s attorney filed a joint motion continuing the trial; the trial was ultimately set by an agreed order of the parties; a notice of trial setting was issued; Gloria agreed to the pre-trial order, which actually stated that jurisdiction was not contested. Additionally, Gloria did not object to personal jurisdiction prior to trial, other than a general invocation of all Rule 12(b) defenses in her answer to the Holmes’s petition, or at the date ultimately set for trial, and she introduced the testimony of several witnesses on her behalf at trial.
¶ 21. We hold that any failure of the Holmeses to strictly comply with the notice requirements for a Rule 81 summons is excused by Gloria’s counsel’s appearing before the chancellor without objecting to personal jurisdiction, Gloria’s agreeing to various pre-trial motions and orders setting the case for trial, and Gloria’s introducing testimony on her behalf at trial. Thus, the trial court did not commit manifest error in assuming personal jurisdiction over the instant case.
II. Qualifications of Experts.
¶ 22. The admission of expert evidence is within the sound discretion of the trial judge. Miss. Transp. Comm’n v. McLemore, 863 So.2d 31, 34 (Miss.2003) (citing Puckett v. State, 737 So.2d 322, 342 (Miss.1999)). Therefore, the decision of a trial judge will stand “unless we conclude that the discretion was arbitrary and clearly erroneous, amounting to an abuse of discretion.” Id.

A. Specialist.

¶ 23. Gloria argues the chancellor committed manifest error by incorporating the testimony of Dr. John P. Galloway into his findings, alleging Dr. Galloway failed to meet qualification and investigation prerequisites that would allow a trier of fact to rely on his opinions. Gloria did not challenge Dr. Galloway’s qualifications at trial, did not object to his testimony, and did ■ not challenge his qualifications in a post-trial motion. Becáuse of these fail *576 ures, we find Gloria has waived this issue and is procedurally barred from raising it for the first time on appeal. See Brown v. State, 890 So.2d 901, 915 (Miss.2004) (lack of contemporaneous objection to testimony at trial procedurally barred issue on appeal). Notwithstanding the procedural bar, alternatively, we find no merit to this allegation of lack of qualification and/or investigation.

B. Guardian Ad Litem.

¶ 24. Gloria argues the chancellor committed manifest error by incorporating the guardian ad litem’s (GAL) testimony into his findings, claiming the GAL failed to meet qualification and investigation prerequisites. As above, Gloria failed to challenge the GAL’s qualifications, did not object to any of her testimony, did not object to admission of her report, and did not challenge the GAL’s report or testimony in a post-trial motion. We find Gloria is procedurally barred from raising this issue for the first time on appeal. Notwithstanding the procedural bar, alternatively, we find no merit to this allegation of lack of qualification and/or investigation.
III. Errors in Fact Finding.

A. Gloria voluntarily relinquished parental rights.

¶ 25. Gloria contends the chancellor found she had voluntarily relinquished her parental rights and that such a finding is manifest error. She claims the chancellor erred in applying our decision from Grant v. Martin, 757 So.2d 264 (Miss.2000), to this case and incorrectly placed the burden on her to prove by clear and convincing evidence that her parental rights should not be terminated.[5] The Holmeses rebut this contention, arguing there would have been no reason for the chancellor to find the Holmeses proved three alternative grounds for adoption if he had found Gloria had voluntarily relinquished her parental rights.[6] The chancellor’s memorandum opinion reflects that he applied Grant to Gloria’s counter-claim for a modification of custody, rather than his decision to terminate Gloria’s parental rights, as Gloria maintains. Additionally, any reference to Grant or the loss of the natural parent presumption is noticeably absent from the section of the chancellor’s opinion dealing with termination of parental rights.
¶ 26. In the section of the memorandum opinion dealing with the termination of Gloria’s parental rights, the chancellor cited the correct statutory authority, see Miss.Code Ann. §§ 93-17-7 & 93-15-109[7], and found that “upon due consideration of, and assignment of weight and credibility to, all the evidence produced in *577 its entirety, ... the proof is clear and convincing to justify and mandate (1) termination of the parental rights of Gloria.” This finding articulates the requirements of Miss.Code Ann. Section 93-15-109. In Petit v. Holifield, 443 So.2d 874, 877 (Miss.1984), this Court stated that the burden is on the petitioner (in this case the Holmes-es) “to show by clear and convincing evidence that the objecting parent has either abandoned or deserted the child or is mentally or morally or otherwise unfit to rear or train the child.”
¶ 27. Although the chancellor’s opinion does not explicitly state which party had the burden of proof, the record is absent of any finding that Gloria voluntarily relinquished her parental rights. Because the chancellor made no such finding, we find no merit to this argument. Thus, we decline to consider whether Gloria voluntarily relinquished her parental rights.

B. Gloria abandoned K.T.M.

¶ 28. Gloria alleges the chancellor committed manifest error in finding she had abandoned K.T.M. In the chancellor’s memorandum opinion he stated that “Gloria has effectively abandoned the child, and by her conduct demonstrates an attitude of disregard for the best interest and welfare of the child, rendering her mentally and practically unfit to rear and train the child.” Gloria claims this finding is not sufficiently supported by the evidence in the record.
¶ 29. Abandonment, one of the grounds for terminating parental rights under Miss.Code Ann. Section 93-15-103, includes not only the defined criminal offense of abandonment, see Miss. Code Ann. § 97-5-1, but also includes “any conduct by a parent which evinces a settled purpose to forego all duties and relinquish all parental claims to the child.” Gunter v. Gray, 876 So.2d 315, 320 (Miss.2004) (citation omitted). The test for abandonment is objective and requires a finding that, under the totality of the circumstances, “the natural parent has manifested [his] severance of all ties with the child.” Id.
¶ 30. In Gunter, this Court found the natural father had not abandoned his children, even after having no contact with them for one and a half years, where he had exercised visitation regularly and routinely before he was incarcerated, his claimed reason for not contacting his children was that he was subject to a court order which prohibited communication with the children’s mother, and contacting his children would have necessitated him breaking the court’s order. Gunter, 876 So.2d at 320-21. Gloria argues that, like Gunter, the record before this Court does not support a finding of abandonment where there is evidence that she has consistently exercised her monthly visitation rights; she has requested more visitation; and there is no evidence of Gloria having harmed K.T.M. Additionally, the report of the guardian ad litem expressly stated that “there are no facts to support that Gloria abandoned or deserted the minor child.”
¶ 31. The Holmeses argue Gloria’s delegation of parental authority to them for such an extended period of time should support a finding of constructive abandonment as in Hill v. Mitchell, 818 So.2d 1221 (Miss.Ct.App.2002). In Hill, which involved custody modification rather than termination of parental rights, the Court of Appeals upheld the chancellor’s finding of constructive abandonment where the mother had essentially been absent from the child’s life for eleven years, had rarely *578 exercised her visitation rights, and had assumed no parental responsibilities during that time. Id. at 1226. The Holmeses would have this Court extend Hill to the instant situation to find constructive abandonment because Gloria exercised little, if any, parental authority over K.T.M. in their time spent together. Hill' is not binding authority on this Court. We are unpersuaded by such an argument.
¶ 32. The record in this case reflects that Gloria has not been totally absent from KT.M.’s life for any significant period of time, as in Hill, so as to support a finding of either constructive or actual abandonment. Gloria entered into a temporary custody agreement for K.T.M.’s benefit when she (Gloria) was going through a difficult period in her life. She had given birth to K.T.M. when she was only seventeen; she had a second child roughly two years later who was the product of rape (this child is currently in the custody of a friend of Gloria’s); and her parents were going through a separation at the time she allowed the Holmeses to take temporary custody of K.T.M. However, just as the father in Gunter, Gloria has continually exercised her visitation rights, no matter how limited they may be.
¶ 33. While the chancellor may have properly adjudged Gloria unfit to retain her parental rights on other statutory grounds, the record before us does not reflect that she has “manifested her severance of all ties with the child,” so as to find that she abandoned K.T.M. Additionally, the chancellor made no specific finding to contradict the guardian ad litem’s report, which stated there were no facts to support a finding of abandonment. See Gunter, 876 So.2d at 323 (requiring a chancellor to state reasons for not adopting GAL’s recommendation). We find the chancellor erred in finding Gloria abandoned K.T.M. However, such error is harmless where, as here, the chancellor properly found parental rights may be terminated on other proper statutory grounds.

C. Gloria failed to support K.T.M.

¶ 34. Gloria also contends the chancellor committed manifest error by finding Gloria had failed to support K.T.M., yet" she cites no legal authority for this proposition. This Court routinely holds an appellants’s failure to cite to any legal authority to support her argument will procedurally bar that issue from being considered on appeal. Carter v. Miss. Dept. of Corr., 860 So.2d 1187, 1193 (Miss.2003) (citing McClain v. State, 625 So.2d 774, 781 (Miss.1993)). Because Gloria failed to support this allegation of error with any legal authority, we find she is procedurally barred from having this Court consider this issue on appeal.
¶ 35. Despite the waiver, alternatively this ruling by the chancellor compels a brief discussion by this Court. The chancellor, in entering the temporary custody order, made the Holmeses legally responsible for the support and maintenance of K.T.M. When the chancellor entered his ruling in the instant action, he cited Gloria’s lack of support as a reason for terminating her parental rights. We note that it is unreasonable for a court to have previously determined that a party such as Gloria is under no legal obligation to provide support for a child then later use that lack of support as a basis to terminate parental rights. Any error here is harmless in view of the chancellor’s proper finding allowing adoption on other grounds.

D. Failure to consider reasonable alternatives.

¶ 36. There is no evidence in the record indicating Gloria preserved this argument before the chancery court. Only now on appeal does Gloria raise the appli *579 cability of Section 93-15-103(4). Our previous “[precedent mandates that this Court not entertain arguments made for the first time on appeal as the case must be decided on the facts contained in the record and not on assertions in the briefs.” Chantey Music Pub., Inc. v. Malaco, Inc., 915 So.2d 1052, 1060 (Miss.2005) (citations omitted). Therefore, Gloria’s failure to present this argument before the chancellor requires us to bar its consideration on appeal. As such, this issue is not properly before this Court, and we will not consider it.
¶ 37. Alternatively, in the interests of completeness we will address this issue on the merits. Gloria contends the chancellor committed manifest error by failing to consider any reasonable alternatives to the termination of parental rights, citing Barnett v. Oathout, 883 So.2d 563 (Miss.2004). Barnett involved DHS removing two minor children from the home of their parents because of medical neglect, placing them in foster care, and later awarding durable legal custody to the foster parents. Id. at 565. The natural father petitioned the court for a modification of custody, alleging the foster mother’s withholding of visitation and telephone contact with the children constituted an adverse material change in the children’s circumstances. Id. at 566. The chancellor agreed and awarded full custody to the natural father. Id. This Court affirmed the chancellor on appeal and mentioned the earlier case of In re S.A.M., 826 So.2d 1266, 1272 (Miss.2002), which discussed durable legal custody as it relates to termination of parental rights. Barnett, 883 So.2d at 569. Miss.Code Ann. Section 93-15-103(h) [8](2000) speaks of durable legal custody as an alternative to terminating parental rights where “the parent retains some form of residual rights and responsibilities” and thus serves as “a vital and obvious distinction to termination of parental rights.” Id. (citing In re S.A.M., 826 So.2d at 1279). “Another distinction is that a decision to grant durable legal custody is not permanent and is, therefore, subject to further review and modification by the courts.” Id.
¶ 38. The Holmeses contend that Barnett is distinguishable from the instant case and has no application here. They note that Miss.Code Ann. Section 43-15-13, which applied to Barnett, required DHS to initiate a proceeding to terminate parental rights unless the child was placed in durable legal custody or long-term or formalized foster care by the court. The Holmeses argue it is specifically within the context of the order of durable legal custody that the Barnett Court mentions Miss. Code Ann. Section 93-15-103(h) as an alternative to terminating a parent’s rights. Because K.T.M. is not under the custody of DHS, they argue Section 93-15-103(4), does not directly apply to the instant situation but rather supplements Miss.Code Section 93-17-7(2)(e) in cases where DHS is involved.
¶ 39. Miss.Code Ann. Section 93-17-7(2)(e) states that a child may be adopted over a natural parent’s objection if “[t]he parent has engaged in acts or omissions *580 permitting termination of parental rights under Section 93-15-103.” Section 93-15-103(3)(e) allows a parent’s rights to be terminated if:
The parent exhibits ongoing behavior which would make it impossible to return the child to the parent’s care and custody: (i) Because the parent has a diagnosable condition unlikely to change within a reasonable time such as alcohol or drug addiction, several mental deficiencies or mental illness, or extreme physical incapacitation, which condition makes the parent unable to assume minimally, acceptable care of the child....
This statutory provision is substantially similar to, and is explicitly stated as a ground for termination under, Miss.Code Section 93-17-7(2), which the Holmeses argue applies in the instant situation. Section 93-15-103(4)[9], which follows the subsection laying out the grounds for termination, states that permanent alternatives to termination of parental rights should be considered and chosen when it is determined to be “in the best interest of the child, parental contacts are desirable and it is possible to secure such placement without termination of parental rights.”
¶ 40. The chancellor’s memorandum opinion includes a well defined list of all of the evidence presented for his consideration. The evidence included the testimony of witnesses and exhibits including Gloria’s hospital records; the GAL report; and the reports a court appointed doctor commissioned to evaluate the child, the mother, and the petitioners. After taking into account the best interests of the child, the chancellor enumerated his reasons why termination of Gloria’s parental rights were appropriate. However, while he did not use the “magic” words “other permanent alternatives” in the record, and did not specifically say he considered such other permanent alternatives pursuant to Section 93-15-103(4) before ultimately finding termination of Gloria’s parental rights was the most appropriate remedy in this matter, it is readily apparent from the record that he did so. Realistically, there were only two reasonable permanent alternatives presented for his consideration: (1) whether to grant the Holmes’ petition for adoption of the child and termination of Gloria’s parental rights; or (2) whether to deny the Holmes’ petition and restore the child to Gloria’s custody. The record certainly reflects that the chancellor considered each of these permanent options, even if he did not specify each option individually, as this Court always prefers. No other permanent options were presented by either side.
¶ 41. Therefore, we find the chancellor acted in accordance with the “permanent alternative” language set forth by the Legislature in Section 93-15-103(4). Thus, the chancellor did not err, and this issue is without merit.
IV. Termination.
¶ 42. Lastly, Gloria contends the chancellor committed manifest error in terminating her parental rights and in allowing the Holmeses to adopt K.T.M. This last assignment of error is essentially a summation of arguments she has already presented to this Court. The Holmeses argue she should be procedurally barred from having this Court consider this issue based on her failure to cite to any legal authority. See Carter, 860 So.2d at 1193. As Gloria has already cited to legal authority in previous sections of her brief which serve as a predicate for this argument, we decline to apply the procedural bar to this issue.
*581 ¶ 43. One of the ultimate findings of fact on which the chancellor based his decision to terminate Gloria’s parental rights is that “Gloria, demonstrates by her conduct, that she suffers from an emotional illness or mental deficiency, and behavior or conduct disorder which makes her unable or unwilling to provide an adequate permanent home for the child at the present time or in the reasonably near future, all this being based upon an established pattern of behavior.” This finding is essentially a restatement of one of the grounds for termination found in Miss. Code Ann. Section 93-17-7(2)(c).
¶ 44. The chancellor supported this ultimate finding with findings that: Gloria was lacking in stability, discipline, purpose, ambition, and parental responsibility; she had been largely unemployed and dependent on SSI disability since she left her parents’ home; she never finished high school or attempted to earn her GED, despite a stated intention to further educate herself; she had given physical custody of her other child to a friend, without having reclaimed her; she had been hospitalized for mental and/or emotional problems three times, one of which involved a suicide attempt; she was diagnosed with bipolar disorder and borderline personality disorder; and she has provided no significant care or support for K.T.M.
¶ 45. To support her argument that her parental rights should not be terminated, Gloria introduced evidence of recent changes in her life, such as the fact that she is currently taking medication and seeing a mental health nurse practitioner; she has recently started a new job; she has a new residence, and has plans to get married. The record reflects the chancellor considered the evidence introduced by Gloria yet found the reports and testimony of the expert witnesses and the Holmeses themselves more persuasive and credible than the testimony introduced on Gloria’s behalf. We find there was sufficient evidence in the record to support the chancellor’s finding that Gloria suffered from “an emotional illness or mental deficiency, and behavior or conduct disorder” that would prevent her from providing an adequate home for K.T.M. at present or in the near future. This finding by the chancellor established that there was a statutory ground, under Miss.Code Ann. Section 93-17 — 7(2)(c), for terminating Gloria’s parental rights. To the extent a statutory ground for termination was established, the chancellor’s decision to terminate Gloria’s parental rights was not a manifest error.
CONCLUSION
¶ 46. We find that although the chancellor erred in finding Gloria abandoned K.T.M., the error was harmless in that the chancellor properly found parental rights may be terminated on other statutory grounds. Although, he did not per-se use the magic words “other permanent alternatives” on-record, he obviously considered other permanent alternatives to termination of parental rights. We find the record is replete with his consideration of the only two permanent alternatives offered as contemplated in Miss.Code Ann. Section 93-15-103(4). Therefore, we affirm the decision of the Pearl River County Chancery Court’s finding that the best interests of K.T.M. will be served by grant and adjudication of the adoption.
¶ 47. AFFIRMED.
COBB, P.J., CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. GRAVES, J., DISSENTS WITH SEPARATE WRITTEN OPINION *582 JOINED BY WALLER, P.J.; EASLEY, J., JOINS IN PART. DIAZ, J., NOT PARTICIPATING.

. Because the use of actual names in a proceeding of this nature is prohibited by Miss. *570 Code Ann. §§ 93-17-29 & 31 fictitious names are given to all of the parties in this case.

. At the time of K.T.M.'s birth, both of her parents were seventeen years old.

. Tom signed a form of consent to the Holmes’s adoption of K.T.M. He is not a party to this appeal.

. The chancellor deemed jurisdiction to be proper under modes other than the UCCJA. For discussion on the applicability of the UC-CJA see this Court’s opinion in In re Adoption of D.N.T., 843 So.2d 690, 697-706 (Miss.2003).

.In Grant, this Court articulated a new standard to be applied in custody modifications where the natural parent has previously relinquished custody, holding that:
a natural parent who voluntarily relinquishes custody of a minor child, through a court of competent jurisdiction, has forfeited the right to rely on the existing natural parent presumption. A natural parent may reclaim custody of the child only upon showing by clear and convincing evidence that the change in custody is in the best interest of the child.
Grant, 757 So.2d at 266.

. See In re Adoption of D.N.T., 843 So.2d at 707 (“In Grafe v. Olds, 556 So.2d 690, 694 (Miss.1990), we stated that: 'a written voluntary release, or consent by the parent, [§ 93-15-103(2)] terminates the parental rights and thereafter, no objection to the adoption from the natural parent may be sustained. [§ 93-17-7].’ ”)

. Miss.Code Ann. § 93-15-109 states, in relevant part:
After hearing all the evidence in regard to such petition, if the chancellor ... is satisfied by clear and convincing proof that the parent or parents are within the ground *577 requiring termination of parental rights as set forth in this chapter, then the court may terminate all the parental rights of the parent or parents regarding the child....

. The statute quoted in Barnett as being Miss. Code Ann. § 93-15-103(h) actually appears in the most current version of the Miss.Code as § 93-15-103(4) and states:
Legal custody and guardianship by persons other than the parent as well as other permanent alternatives which end the supervision by the Department of Human Services should be considered as alternatives to the termination of parental rights, and these alternatives should be selected when, in the best interest of the child, parental contacts are desirable and it is possible to secure such placement without termination of parental rights.

. See Footnote 7.