GRIFFIS, P.J.,
for the Court:
¶ 1. Kyle[1] appeals the Harrison County Chancery Court’s judgment that terminated his parental rights relating to his daughters, Meghan and Bethany, and ordered their adoption by Karen and Jack. On appeal, Kyle argues that the appellees failed to meet the burden of proof. We find no error in the chancellor’s judgment and affirm.
*1285 FACTS
¶ 2. Kyle is the biological father of Meghan, born December 18, 2001, and Bethany, born July 15, 2003. Brooke, the children’s mother, and Kyle were never married. In 2005, Brooke left Kyle and the children.
¶ 3. From their birth, Meghan and Bethany have occasionally lived with Kyle at the home of his mother, Mae, in Gulfport, Mississippi. Mae’s home became the permanent residence for Kyle and the children from December 2005 until December 2007. During this time, Mae was the children’s primary caregiver and provided financially for Kyle and the children'.
¶4. Since 2008, Mae has had physical custody of the children. Early in 2008, Karen and Jack began to assist Mae in the care of the children.[2] Karen and Jack took the girls to church and to other activities, kept the girls at their home, and transported the girls to school.
¶ 5. Shortly thereafter, Mae filed a complaint in the chancery court to establish a guardianship for Meghan and Bethany. A guardian ad litem was appointed. The chancellor entered a judgment reflecting that Kyle admitted he had used marijuana within four months of the hearing date. Nevertheless, Kyle was awarded unsupervised visitation with his daughters, but he was required to submit a hair follicle for drug testing prior to the visitation. He was also ordered to pay $280 per month in child support.
¶ 6. During this guardianship proceeding, Mae, Karen, and Jack filed a complaint that asked that Karen and Jack be appointed co-guardians, along with Mae. On March 13, 2009, over Kyle’s objection, the chancellor entered a judgment that appointed Karen and Jack as co-guardians of Meghan and Bethany.
¶ 7. In May 2009, the girls began to live with Karen and Jack. They continued to spend time with Mae on the weekends. Kyle would visit his daughters on some of the weekends, when they were at his mother’s home. Mae would supervise Kyle’s visits, but on occasion she allowed Kyle to take the girls on outings.
¶ 8. On May 25, 2010, Karen and Jack filed a complaint for adoption. In the complaint, they asked that the parental rights of the children’s parents be terminated. Karen and Jack also requested to be allowed to adopt Meghan and Bethany.
¶ 9. On August 30, 2010, Kyle’s attorney filed a motion for an extension of time. On September 1, 2010, the chancellor entered an order that continued the hearing until October 22, 2010. The order determined that the children’s mother, Brooke, had been properly served with process and had not responded to the complaint. The chancellor, therefore, terminated Brooke’s parental rights.
¶ 10. The order also acknowledged that Kyle’s visitation was conditioned on the submission of a hair follicle for a drug screening. The chancellor noted that Kyle had not complied with this condition and ordered the screen be performed immediately. The record includes a report, filed *1286 October 4, 2010, which indicated that Kyle’s hair follicle drug screen was performed, and he tested positive for marijuana. A urine test was performed the day before the hearing, and it did not indicate the presence of any illegal substances.
¶ 11. At the hearing on this matter, Mae testified that Kyle had become angry with her and yelled at her in the presence of the children. She testified that she does not know if Kyle is clinically depressed or is bipolar, but he resents her and lashes out at her. The guardian ad litem reported that the girls said their father had a bad temper, and he was mean to their grandmother. Once, Kyle became angry and kicked his mother’s stove. In 2007, Mae obtained a restraining order on Kyle, and she had him removed from her home.
¶ 12. Kyle paid child support from the time the guardianship order was entered in July 2008 until September 2009. He testified that he was forced to stop working in September 2009 at the direction of his doctor. Kyle had developed a medical condition known as pustular dyschidrosis, an auto-immune disease. This condition prevented him from working. Kyle also testified he received medical disability benefits from his employer until February 2010. He also said that he had applied for social security disability, but he had been turned down three times. At the time of the hearing, Kyle had not worked in over a year.
¶ 13. Mae testified that her son had a history of drug use. She confirmed that he had been in rehab before the girls were born. She also testified that, although she had never seen him use drugs on her property, she believed he had brought drugs and drug users onto her property. The guardian ad litem and Karen both testified that Meghan had told them she saw her father smoking “stinky cigarettes” in the garage. Kyle admitted that he had used drugs three or four times in the years prior to the trial. His new wife, Traci, stated she did not tolerate drug use in her home and that she had once kicked Kyle out of her home for having a bag of marijuana.
¶ 14. At the time of the hearing, Karen and Jack provided Meghan and Bethany with a home, food, clothing, and medical care. Karen and Jack each testified that they loved the girls and were willing and able to continue caring for them.
¶ 15. Kyle could not testify that he had done anything to put himself in a position to provide full-time, day-to-day care for his daughters, but he expressed the desire to continue visitation with the girls.
¶ 16. The guardian ad litem’s report recommended that Kyle’s parental rights be terminated and that the adoption be ordered by the court.
¶ 17. By letter to the attorneys, dated January 5, 2011, the chancellor indicated his decision that “the termination of parental rights is warranted and that the adoption of these children should go forward.” On January 7, 2011, the chancellor entered a judgment, which included findings of fact and conclusions of law, that terminated the parental rights of Kyle and granted the adoption of Meghan and Bethany by Karen and Jack. It is from this order that Kyle now appeals.
STANDARD OF REVIEW
¶ 18. In cases where parental rights have been terminated, our scope of review is limited. We review the chancellor’s factual findings under the manifest *1287 error/substantial credible evidence test. S.N.C. v. J.R.D., Jr., 755 So.2d 1077, 1080 (¶ 7) (Miss.2000) (citing Vance v. Lincoln County Dep’t. of Pub. Welfare, 582 So.2d 414, 417 (Miss.1991)). “This Court -will not overturn a chancellor’s findings of fact when supported by substantial evidence unless an erroneous legal standard is applied or is manifestly wrong.” Grafe v. Olds, 556 So.2d 690, 692 (Miss.1990). Under this standard, the court asks “not how we would have decided the case ab initio but whether there be credible proof’ to support the chancellor’s findings of fact “by clear and convincing evidence.” S.N.C., 755 So.2d at 1080 (¶7) (citing Ethredge v. Yawn, 605 So.2d 761, 764 (Miss.1992)). Additionally, the Court on appeal “ask[s] not how we would have decided the case ab initio but whether there be credible proof from which a rational trier of fact may have found abandonment by clear and convincing evidence.”
ANALYSIS
¶ 19. In this appeal, Kyle argues that the appellees failed to meet their burden of proof. Kyle concedes that he was “less than an ideal parent,” but argues that there was not sufficient evidence to terminate his parental rights and allow the adoption of his children.
¶ 20. Mississippi law allows a child to be adopted over the objection of a natural parent in limited circumstances. Mississippi Code Annotated section 93-17-7 (Rev.2004) provides:
(1)No infant shall be adopted to any person if either parent, after having been summoned, shall appear and object thereto before the making of a decree for adoption, unless it shall be made to appear to the court from evidence touching such matters that the parent so objecting had abandoned or deserted such infant or is mentally, or morally, or otherwise unfit to rear and train it, including, but not limited to, those matters set out in subsection (2) of this section, in either of which cases the adoption may be decreed notwithstanding the objection of such parent, first considering the welfare of the child, or children sought to be adopted....
(2) An adoption may be allowed over the objection of a parent where:
[[Image here]]
(b) The parent has not consistently offered to provide reasonably necessary food, clothing, appropriate shelter and treatment for the child. For purposes of this paragraph, treatment means medical care or other health services provided in accordance with the tenets of a well-recognized religious method of healing with a reasonable, proven record of success.
(e) The parent suffers from a medical or emotional illness, mental deficiency, behavior or conduct disorder, severe physical disability, substance abuse or chemical dependency which makes him unable or unwilling to provide an adequate permanent home for the child at the present time or in the reasonably near future based upon expert opinion or based upon an established pattern of behavior.
(d) Viewed in its entirety, the parent’s past or present conduct, including his criminal convictions, would pose a risk of substantial harm to the physical, mental or emotional health of the child.
¶ 21. Whether a person should be permitted to adopt a child is a two-step process. The court must first find that *1288 one of the grounds for adoption is present: desertion or abandonment, or moral unfitness. Natural Mother v. Paternal Aunt, 583 So.2d 614, 618 (Miss.1991). Then, there must be a definite adjudication that the best interest of the child is promoted or enhanced by the proposed adoption. Ainsworth v. Natural Father, 414 So.2d 417, 420-21 (Miss.1982).
¶ 22. Here, the chancellor relied on Petit v. Holifield, 443 So.2d 874, 878 (Miss.1984), to determine that Kyle had not abandoned his daughters. In Petit, the Mississippi Supreme Court reversed the judgment of the trial court granting an adoption that was based upon the fact that the father was $7,000 in arrears in child support and had only visited with his children a few times. At trial, the father proved that he was able to support himself and his wife, but he was unable to purge himself of the contempt charges against him. Id. at 878-79. The supreme court reversed the adoption but commented that the conduct of the father did not evince a settled purpose to forego all parental rights and relinquish all parental claim to his children. Id. The supreme court, however, went on to state that the father’s conduct was “teetering” on the brink insofar as his duty to support his children was concerned. The supreme court found that if circumstances continued as they were without improvement, a court would be justified in allowing an adoption despite the father’s protest. Id.
¶ 23. Instead, here, the chancellor found that Kyle’s behavior, like that of the father in Petit, “teetered” on the edge of evincing a settled purpose to forego all parental rights and responsibilities. The chancellor noted that unlike the father in Petit, Kyle’s behavior had been continuing for some time, and he had shown no evidence of making an effort to effect change. Kyle testified that he had made no effort to put himself in a position to care for his children. He had not worked in two years and presented no evidence at trial to support his medical condition. He also provided little to no evidence of his willingness to assume full parental responsibility of his children.
¶ 24. We find guidance in the supreme court’s opinion in In re Adoption of a Minor Child, 931 So.2d 566, 570-71 (¶5) (Miss.2006). There, the Holmeses had temporary legal custody of a young child by virtue of a court order. Id. at 570 (¶ 1). They later filed a petition to terminate the parental rights of the natural mother and father in hopes of adopting the child. Id. While the natural father joined in this request, the mother objected and requested custody of the child or modified visitation. Id. The chancellor held that termination of the mother’s parental rights was justified. Id. at (¶ 5). The chancellor found that the mother “was lacking in stability, discipline, purpose, ambition, and parental responsibility.” Id. at 581 (¶ 44). The mother “had been largely unemployed,” was “dependent on SSI disability,” and had “provided no significant care or support for” her child. Id. The chancellor determined a statutory ground existed for terminating the mother’s parental rights because she “suffered from ‘an emotional illness or mental deficiency, and behavior or conduct disorder’ that would prevent her from providing an adequate home for [her child] at present or in the near future.” Id. at 581 (¶ 45). The supreme court upheld the chancellor’s findings and ruled that there was sufficient evidence to support the termination of parental rights. Id.
¶ 25. Similarly, here, the chancellor determined that Kyle has largely been *1289 unemployed. Kyle was dependent on others to support him and his children financially. Kyle has also relied on others to take care of his children. He has been dependent on medical disability benefits, and he has not had a job or income in over a year. He has also made no significant contribution to the care and support of his children.
¶26. Kyle has admitted to drug use, and he has tested positive for marijuana throughout his children’s lives and within the time period of these court proceedings. His mother testified to his continued drug use, and his children indicated that he has smoked marijuana around them. His wife also indicated that she is suspicious that Kyle is still doing drugs, and she kicked him out of her home for having marijuana in his possession. We find that this is sufficient evidence to support the chancellor’s finding that Kyle suffers from substance abuse or a chemical dependency, which makes him unwilling or unable to provide an adequate permanent home for his children at the present time or in the reasonable near future based upon his established pattern of drug use. See Miss. Code. Ann. § 93-17-7(2)(c).
¶ 27. Kyle also admitted that he has done nothing to put himself in a position to take on the full responsibility of his children. From their birth, he has depended on others to take care of them, and he has been satisfied with his children being raised by his mother, Mae, as well as Karen and Jack.
¶ 28. There is certainly sufficient evidence to support the chancellor’s finding that Kyle is a forty-five-year-old man who has not consistently offered to provide reasonably necessary food, clothing, shelter, and treatment for his daughters. Thus, the chancellor concluded this satisfied another statutory ground to permit the adoption of Meghan and Bethany over their father’s objection. See Miss.Code Ann. § 93 — 17—7(2)(b).
¶ 29. Upon determination that there is a statutory ground for termination of parental rights, a court must then consider the best interest and welfare of the child. Miss.Code Ann. § 93-17-7. The chancellor found that it was in the best interests of the children to allow Karen and Jack to adopt Meghan and Bethany. The chancellor’s decision was based upon the testimony of Mae, the guardian ad litem, Karen, Jack, and another witness who took care of the children. All the witnesses testified that Meghan and Bethany were well loved, well fed, doing well in school, properly clothed, attending church and extracurricular activities, and happy and thriving. The chancellor also found that Karen and Jack were willing to be responsible parents and were in a position to care for the children when their own father had proven he was unwilling and unable to care for them.
¶30. For these reasons, we find that the chancellor’s decision was based on substantial credible evidence. The chancellor considered all of the testimony and evidence to conclude that Mae, Karen, and Jack presented clear and convincing evidence that Kyle’s parental rights should be terminated and that Karen and Jack should be allowed to adopt Meghan and Bethany. Therefore, we find no merit in Kyle’s appeal. We affirm the chancellor’s judgment.
¶ 31. THE JUDGMENT OF THE CHANCERY COURT OF HARRISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
*1290 LEE, C.J., IRVING, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ„ CONCUR.

. In this opinion, fictitious names are used for all of the parties.

. The report of the guardian ad litem in this case sheds some light on why Karen and Jack became involved in the children's care. Mae told the guardian ad litem that she could hardly take care of herself at age eighty. She said that she would raise her granddaughters if she could, but she needed help. Karen and Jack stepped in to assist. As we discuss later, the guardian ad litem found that Karen and Jack were providing the best home and the best life imaginable for the children, and she recommended that parental rights be terminated.