## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 98-CT-00261-SCT

*ROBIN HUMPHREY MARTIN GRANT*

*v.*

*SCOTT ALAN MARTIN, LARRY MARTIN AND PEGGY MARTIN*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 01/13/1998 |
| TRIAL JUDGE: | HON. PAT WISE |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | PRENTISS M. GRANT |
| ATTORNEY FOR APPELLEES: | VAUGHN DAVIS, JR. |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| DISPOSITION: | REVERSED AND REMANDED - 04/13/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/4/2000 |

**EN BANC.**

**COBB, JUSTICE, FOR THE COURT:**

¶1. Robin Humphrey and Scott Martin were married in 1989. In 1993, they voluntarily relinquished full custody of their three young children, then ages 4, 2 ½, and 1 ½ years, to Scott's parents, ostensibly so that the children would have medical insurance benefits. An order of the Hinds County Chancery Court, First Judicial District, was entered on September 29, 1993, appointing the paternal grandparents as guardians and granting them custody.

¶2. On March 27, 1995, Robin and Scott were divorced on the ground of irreconcilable differences. In the Settlement Agreement which was incorporated in their Final Judgment for Divorce, they agreed that custody of their three minor children should remain with the paternal grandparents, subject only to reasonable visitation rights.

¶3. Robin remarried in September of 1996, and in May of 1997 she petitioned the chancery court for modification of the custody order entered at the time of divorce, and for dissolution of the guardianship and the return of her children, who were then almost 8, 6 ½, and 5 ½ years of age. At the hearing on her motions, only Robin and her new husband, Prentiss Grant, testified. In her testimony, Robin acknowledged that she has provided almost no financial assistance toward the children's expenses during the four years they have lived with their grandparents, even though she was employed much of the time and could have contributed. Although she has the children for visitation every other weekend, and talks with them by telephone each week, she has not met their teachers, does not even know the teachers' names, and has not ever seen (nor asked for, apparently) the children's report cards. She has made few, if any, decisions

regarding health and dental care for the children, and does not even know which dentist and doctor treats the children. She has never attempted to consult with the children's mental health counselors about the proposed change of custody or any other matters, except to call to request that they come to her attorney's office. Furthermore, she apparently has not sought counsel with anyone else regarding the impact the change of custody might have on the children. For most of the children's lives, she has basically been an uninvolved parent.

¶4. At the hearing, there was no testimony that it was in any way detrimental to the children to continue living with their grandparents. At the close of testimony by Robin and her husband, counsel for the grandparents asked the court to enter a judgment denying the modification and the dissolution of the guardianship. The chancellor asked counsel "[w]hat is your motion, a motion to dismiss?" Counsel responded affirmatively. The motion was granted, and the case was dismissed without further hearing, thus leaving the children in custody of their grandparents.

¶5. The chancellor found that Robin had "wholly failed to prove a material change in circumstance which adversely effects the welfare of the minor children", thus applying the legal standard ordinarily applied to a request for modification of child custody as between parents. See *Thomas v. Purvis,* 384 So. 2d 610, 612 (Miss. 1980). However, prior to today, this Court has consistently applied a different standard in deciding a custody dispute between a natural parent and a third party such as a grandparent, as follows:

> [I]t is presumed that the best interests of the child will be preserved by it remaining with its parents or parent. In order to overcome this presumption there must be a clear showing that the parent has (1) abandoned the child, or (2) the conduct of the parent is so immoral {as} to be detrimental to the child, or (3) the parent is unfit mentally or otherwise to have the custody of his or her child.

*McKee v. Flynt*, 630 So.2d 44, 47 (Miss. 1993); *Carter v. Taylor*, 611 So.2d 874, 876 (Miss. 1992); *Rodgers v. Rodgers,* 274 So.2d 671, 672 (Miss. 1973). Absent clear proof of one of the above circumstances, the natural parent is entitled to custody of his or her child. *McKee,* 630 So.2d at 47 (citing *Rutland v. Pridgen,* 493 So.2d 952, 954 (Miss. 1986)).

¶6. In the present case, the chancellor made no finding that Robin had abandoned her children or was otherwise unfit. The chancellor did find, however, after considering "all the 'Albright' factors", that "it is in the best interest of the minor children that their care, custody and control remain with [their paternal grandparents]".

¶7. Feeling aggrieved, Robin appealed. The Court of Appeals found that grandparents have no right to custody of a grandchild as against a natural parent and that a natural parent's bid for custody must prevail absent a showing of abandonment or unfitness, citing *Ethredge v. Yawn,* 605 So.2d 761, 764 (Miss. 1992), and reversed and rendered in Robin's favor, having found no evidence in the record of unfitness or abandonment so as to overcome the presumption in favor of a natural parent's custody.

¶8. This Court granted certiorari for two reasons. First, we find that it was error for the Court of Appeals to reverse and render when there has not been a full hearing on the merits of this case. The only testimony heard in the trial court was from the natural mother and her husband. By reversing the chancellor's decision granting a motion to dismiss at the close of the parent's proof, the Court of Appeals placed this case in a procedural posture where it was appropriate for the grandparents to go forward with their proof. The case should have been remanded for that purpose rather than rendered.

¶9. Second, we take this opportunity to consider the proper standard to be applied in a request for modification where the moving natural parent, or parents, have previously relinquished custody. Our law clearly has a strong presumption that a natural parent's right to custody is superior to that of third parties, whether grandparents or others. This is as it should be. However, this Court has never before been asked to rule on whether the natural parents' consent to and joinder in court proceedings granting custody to such third parties should alter that presumption. Because stability in the lives of children is of such great importance, we have carefully weighed the impact of establishing an exception, or a new standard, for such instances. While we do not want to discourage the voluntary relinquishment of custody in dire circumstances where a parent, for whatever reason, is truly unable to provide the care and stability a child needs, neither do we want to encourage an irresponsible parent to relinquish their child's custody to another for convenience sake, and then be able to come back into the child's life years later and simply claim the natural parents' presumption as it stands today.

¶10. Therefore we adopt a new standard and hold that a natural parent who voluntarily relinquishes custody of a minor child, through a court of competent jurisdiction, has forfeited the right to rely on the existing natural parent presumption. A natural parent may reclaim custody of the child only upon showing by clear and convincing evidence that the change in custody is in the best interest of the child. This new rule not only reaffirms that the polestar

consideration in all child custody cases is the best interest of the child, but also gives the chancellor the authority to make a "best interest" decision in voluntary relinquishment cases without being fettered by the presumption in favor of natural parents which applies in other child custody cases.

## CONCLUSION

¶11. We have adopted a new standard, thus we must remand this case for a new trial because the plaintiff's case was tried without notice of the standard we adopt today. The best interests of the children require a full hearing in this custody dispute. The judgments of the Court of Appeals and the Hinds County Chancery Court are reversed, and this case is remanded to the trial court for a full hearing on the merits, consistent with this opinion.

¶12. **REVERSED AND REMANDED.**

> **PRATHER, C.J., BANKS, P.J., SMITH AND WALLER, JJ., CONCUR. McRAE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY PITTMAN, P.J. MILLS AND DIAZ, JJ., NOT PARTICIPATING.**
>
> **McRAE, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶13. The chancellor correctly ruled using the standards in place at the time of the hearing and as understood by all parties. She was correct in holding that Grant had essentially abandoned her children and in their best interest, the children's grandparents should maintain custody. From the record it appears that the parties and the chancellor were all aware that the relevant question was what was best for the children. I, therefore, part company with the majority's decision to send this case back for another hearing to have the chancellor determine something which has already been determined, the best interest of the child. After the parties have gone through the initial custody battle, which these parties have, the parental primacy presumption is no longer available to the natural parents and the best interests of the child is the polestar consideration. As a

result, I must concur in part and dissent in part.

¶14. Robin Grant and Scott Martin in their agreement for a divorce voluntarily relinquished full custody of their three children to the children's grandparents, Larry and Peggy Martin in 1993 after an uncontested divorce. The chancellor approved it and incorporated it in the judgment for divorce. Four years later, Robin sought to modify the court's final judgment. The chancellor correctly ruled that Robin failed to show any circumstances which required a change in custody and that it was in the best interests of the children to remain with their grandparents. We would be remiss to allow a parent to perpetually rely on the presumption in their favor after voluntarily relinquishing custody and practically abandoning the children for four years. Such a holding would deny the chancery court the power to provide for the best interests of minor children. While I agree that the Court of Appeals decision must be reversed, I find no reason for holding that another hearing should take place using the new standard. If we are to in fact do away with the parental primacy presumption in such instances and focus entirely on the best interest of the child and material changes, then it should be done prospectively. The chancellor correctly dismissed Grant's motion and did so using the correct standard.

¶15. The new standard set forth today by the majority should have no bearing on the custody battle at issue in this case. The chancellor correctly applied the standard set forth in ***Rodgers v. Rodgers***, 274 So.2d 671 (Miss. 1973) which involved a contest between the natural mother of a child and the paternal grandparents, where the Court said:

> [I]t is presumed that the best interest of the child will be preserved by it remaining with its parents or parent. In order to overcome this presumption there must be a clear showing that the parent has (1) abandoned the child, or (2) the conduct of the parent is so immoral to be detrimental to the child, or (3) the parent is unfit mentally or otherwise to have the custody of his or her child. . . .

274 So.2d at 673.

¶16. Through the testimony of Grant, the chancellor found that there had been no material changes, that Grant had essentially abandoned the children and that in their best interests custody should remain with the grandparents.

¶17. Testimony at trial showed that once giving custody to the children's grandparents Grant never provided medical attention, other than carrying one child to the doctor during a visitation period three months prior to the hearing. She had no insurance policy for her children although it was available through her employment. Although she testified that she had been employed at least 75% of the time since her separation from her ex-husband, she never attempted to make any monetary contribution towards the cost of feeding her children. While she would sometimes visited her children's soccer and t-ball games, she never offered to pay fees associated with those activities. Grant also knew little about her children's education and their teacher's names and had never requested to see their report cards. By showing no concern for the children's education, health or future, Grant essentially abandoned her children.

¶18. The majority's claim that a full trial on the merits was not held the first time is disingenuous. Mrs. Grant was given every opportunity to bring forth proof in this case to convince the chancellor that it was in the best interest of the children to be taken from their grandparents.

MR. HUNTER [Grant's attorney]: Your Honor, the plaintiff doesn't intend to call any other witnesses

or offer any more proof, but would move the Court in order that her pleadings conform to the proof to amend by adding at the end of paragraph x, **that the best interests of the three children will be served by placing their custody with their mother. Thank you.**

THE COURT: . . .All right, is it my understanding that you rest at this time?

MS. GARDNER [also Grant's attorney]: Plaintiff rests, Your Honor.

¶19. As shown above, Grant recognized her burden of proving what is best for the children and failed. She should not be given a second bite at the apple under these circumstances. For the above reasons, I would reverse the decision of the Court of Appeals and affirm the ruling of the chancellor. Accordingly, I concur in part and dissent in part.

**PITTMAN, P.J., JOINS THIS OPINION.**