913 So.2d 416 (2005)
Regina SCHONEWITZ, Appellant,
v.
Sandra Lee PACK and Douglas Rather Pack, Appellees.
No. 2003-CA-01512-COA.
Court of Appeals of Mississippi.
May 3, 2005.
*418 William W. Dreher, Gulfport, attorney for appellant.
Kelly Michael Rayburn, attorney for appellees.
Before KING, C.J., CHANDLER and BARNES, JJ.
CHANDLER, J., for the Court.
¶ 1. While Regina Schonewitz was living in Ohio, the father of her son moved the child to Long Beach, Mississippi. Her son, Michael, was one year old at the time. The Chancery Court of Harrison County granted the father's request for custody, with the paternal grandparents, Sandra and Douglas Pack, providing primary care. Regina was unable to make the court appearance and claims to have unsuccessfully requested a continuance.
¶ 2. The following year, the paternal grandparents filed a motion for general guardianship over Michael. They claim to have been unable to find Regina, and they served her through publication. Regina did not contest their motion, so it was granted.
¶ 3. Two years later, Regina came to Long Beach. She claims that it was during this visit that she learned about the general guardianship order for the first time. She filed a motion to set aside the order. One year later, the chancery court entered a temporary order allowing the custody and guardianship orders to stay in effect, with Regina receiving visitation rights. A series of orders were later entered, giving Regina additional visitation.
¶ 4. Three years after Regina filed her motion to set aside the custody and guardianship orders, the Packs filed a motion for sole permanent physical and legal custody.
¶ 5. The chancellor found that the natural parent presumption in favor of Regina did not apply, finding that she had constructively abandoned her son. The chancellor found that it was in Michael's best interests to remain in the care of the Packs, primarily because Michael had been living with them for most of his life. Regina appeals, raising the following issues:
I. WHETHER THE COURT ERRED IN REFUSING TO ADDRESS THE ISSUE OF JURISDICTION
II. WHETHER THE COURT ERRED IN RULING THAT REGINA HAD CONSTRUCTIVELY ABANDONED THE MINOR CHILD
III. WHETHER THE COURT ERRED IN REFUSING TO ALLOW REGINA TO APPEAL IN FORMA PAUPERIS

IV. WHETHER THE COURT ABUSED ITS DISCRETION FOR REFUSING TO AWARD REGINA'S ATTORNEY'S FEES BECAUSE OF FRAUD COMMITTED UPON THE COURT
¶ 6. We find that the chancellor applied the incorrect legal standard in deciding that Regina had constructively abandoned her son, and we reverse and remand as to this issue. We affirm as to all other issues.

FACTS
¶ 7. Regina Schonewitz and James Streams are the natural parents of James Michael Douglas Streams (Michael), born on February 16, 1995. Regina and James were never married; Michael was conceived and born while Regina was married to another man. Sandra Lee Pack and Douglas Rather Pack are the natural mother and stepfather of James.
*419 ¶ 8. In May of 1995, Regina and Michael moved to Columbus, Ohio. James followed some weeks later. On March 19, 1996, Regina agreed to let James take Michael with him to visit a friend. She later discovered that James had taken all of Michael's clothes, all of their money and had hidden her car, and returned to Long Beach, Mississippi, taking Michael with him. Six days later, Regina was served with a petition for modification, and a Rule 81 summons setting a court date for April 16, 1996. The petition requested that James be awarded permanent physical custody of Michael, with James's mother, Sandra Pack, providing primary child care for Michael. The Packs have been the primary caregiver of Michael since that time.
¶ 9. Prior to leaving Ohio, James told Regina that he had repaired her car. A few days later, the repairs failed, the car overheated and the engine was ruined. Regina contends that she was unable to attend the hearing. She made several calls to the court attempting to get a continuance, but she was unsuccessful.
¶ 10. Regina testified that she traveled to Long Beach looking for James and Michael in the summer of 1996, and about four times each year from 1996 to 1999, for a total of about twelve times. Regina filed kidnaping charges, but these charges were unsuccessful, because Michael was legally in the custody of his father. The Packs claim that Regina came to Long Beach only two times. They admitted that they filed criminal charges against her both times she came to their house.
¶ 11. On March 24, 1997, Doug and Sandra petitioned for general guardianship, asking that they be named the guardians of Michael and that they be granted custody of him. James consented to the guardianship request. The petition stated under oath that Regina's post office and street addresses were unknown "after diligent search and inquiry." Service was made upon Regina in The Sun Herald newspaper on March 31, April 7, and April 14, 1997. On May 13, 1997, apparently without Regina's knowledge, the court entered an order awarding the Packs a general guardianship of Michael.
¶ 12. During Regina's first trip to Long Beach to see the Packs, the Packs informed Regina that Michael was with his father, and they had moved to Texas. Regina attempted to locate James, but she was unsuccessful. In March of 1999, Regina made a second trip to the Packs' home. She looked through the window and saw Michael in the kitchen. When Sandra Pack opened the door, Sandra's daughter grabbed Michael and took him out of Regina's sight. Sandra then told Regina to leave and shoved her off the porch. She immediately filed trespassing charges against Regina. Having located Michael, Regina contacted an attorney. At this point, she learned that the Packs had been awarded guardianship of Michael. On March 8, 1999, Regina filed a motion to set aside the custody and guardianship orders.
¶ 13. In July of 2000, Regina moved from Ohio to Water Valley, Mississippi, a town approximately five hours from Long Beach. On October 17, 2000, the court entered a temporary order permitting the prior orders to remain in effect and keeping the physical custody of Michael with the Packs. Regina was awarded visitation privileges. On November 16, 2000, the court permitted Regina additional visitation.
¶ 14. On December 20, 2000, the court entered a general order requiring that Regina attend parenting classes and appointing Waide Baine as the guardian ad litem for Michael. On December 6, 2001, the court entered an order allowing Regina *420 Christmas, spring break and summer visitation.
¶ 15. On August 15, 2002, the Packs filed a complaint to modify child custody. They alleged that Regina had voluntarily abandoned Michael for a substantial period of the child's life and that the Packs had raised the child since he was one year of age. The Packs further alleged that they had stood in loco parentis to Michael and that Regina had forfeited the right to rely on the natural parent presumption due to her actual or constructive abandonment of her child.
¶ 16. The chancery court awarded the Packs sole physical and legal custody of Michael subject to certain rights of visitation awarded to Regina. The court found that Regina had constructively abandoned Michael, because she had not pursued her parental rights diligently enough to satisfy the court. In reaching its conclusion, the court found, in part, as follows:
The Court finds that from March 1996 until Regina filed her Motion on March 8, 1999, she knew the whereabouts of Michael and the address of the Packs. Regina attempted to visit Michael on two or three occasions during this period. The Packs denied Regina permission to see Michael on each of these occasions. The Court accepts the testimony of the Packs that Regina conducted herself in a manner not conducive to seeing her son, and on one occasion she was with a man whom they did not know. In each of these instances, Regina's statements and actions led the Packs to believe that she was there for the sole purpose of taking the child and leaving Mississippi.

ANALYSIS
¶ 17. In domestic cases, this Court will not reverse the decision of a chancellor when his findings are supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, or applied an erroneous legal standard. Kennedy v. Kennedy, 650 So.2d 1362, 1366 (Miss.1995).

I. WHETHER THE COURT ERRED IN REFUSING TO ADDRESS THE ISSUE OF JURISDICTION
¶ 18. The Packs argue that the issue of service of process is irrelevant because Regina was properly before the court, represented by counsel, and a trial on the issue of custody was held. However, Regina is not complaining that she received insufficient process for the order that was entered in 2003. Regina is challenging the validity of the 1997 order granting general guardianship to the Packs, claiming that the order is void for lack of service of process. She admits that the 1996 order is valid.
¶ 19. Regina argues that if the 1997 order is void, then the Packs must rely on the 1996 judgment in order to make a claim of custody. The 1996 judgment awarded custody to James and not the Packs. Regina claims that such a result indicates that the Packs have no standing to request custody and that the Packs must show a material change in circumstances before they are allowed to make a request for change in custody. Such a claim misstates the law:
The principle that there must be a material change of circumstances which adversely affects a child's welfare before a custody decree may be modified only applies between parents of the child. The correct application of the law as between grandparents (also other persons) and parents is stated in Rodgers v. Rodgers, [274 So.2d 671 (Miss.1973)], viz, the parent is entitled to custody of the child unless he/she has abandoned the child or is unfit to have custody, *421 keeping in mind the best interest of the child. Thomas v. Purvis, 384 So.2d at 610, 612-13 (Miss.1980).
Mabus v. Mabus, 847 So.2d 815, 819(¶ 17) (Miss.2003). Thus, the Packs have standing to request custody of Michael when they make a claim of abandonment or unfitness of the natural parent, as the Packs have done in this case.
¶ 20. It is not necessary for the chancellor to make findings regarding the validity of the 1997 guardianship order, because the chancellor made it clear that his decision on custody was not contingent upon a guardianship order. The chancellor found that Regina had constructively abandoned Michael because "Regina did not take any legal action to challenge the April 16, 1996, order until March 5, 1999." If Regina had been awarded the custody of Michael, the guardianship order would have been a nullity. The award of custody to the Packs also renders the guardianship order a nullity. The validity of the 1997 guardianship order was immaterial to the chancellor's decision granting custody to the Packs, and the Packs have standing to request custody of Michael. Therefore, there is no need for this Court to address the issue of proper service of process.

II. WHETHER THE COURT ERRED IN RULING THAT REGINA HAD CONSTRUCTIVELY ABANDONED THE MINOR CHILD
¶ 21. In all child custody cases, the best interest of the child must be kept paramount. Sellers v. Sellers, 638 So.2d 481, 485 (Miss.1994). "The well-settled rule in a child custody case between a natural parent and a third party is that it is presumed that the best interest of the child will be preserved by being in the custody of the natural parent." Id. at 486. In order to overcome the presumption there must be a clear showing that (1) the parent has abandoned the child, (2) the conduct of the parent is so immoral as to be detrimental to the child, or (3) the parent is mentally or otherwise unfit to have custody of the child. Id. (citing Rodgers v. Rodgers, 274 So.2d 671 (Miss.1973)).
¶ 22. The chancellor found that Regina constructively abandoned her son and that the natural parent presumption does not apply. This conclusion was based on the court's finding that Regina knew the whereabouts of Michael and the address of the Packs from 1996 to 1999, when she filed a motion to set aside both the 1996 and 1997 orders. In addition, the chancellor interpreted Regina's frequent telephone calls to the Pack residence as indicating that she knew of Michael's whereabouts and did nothing to secure his custody. The chancellor also considered Regina's lack of financial support as evidence that she had constructively abandoned her son.
¶ 23. Constructive abandonment is proven by clear and convincing evidence, when grounds for termination of parental rights are present. G.M.R. v. H.E.S., 489 So.2d 498, 500 (Miss.1986). To support the finding that Regina had constructively abandoned her son, the chancellor relied on Hill v. Mitchell, 818 So.2d 1221 (Miss.Ct.App.2002). In Hill, this Court upheld the chancellor's holding that the natural parent had constructively abandoned her child because she did not seek to modify the full-time custody of the grandparents for eleven years that her child lived with them. This Court described the phrase "constructive abandonment" in this way:
This is not "abandonment" in the traditional sense, of complete avoidance of contact for an extended period of time. But it is voluntary abandonment of parental responsibilities for over a decade in the child's life. This kind of abandonment *422 may need to continue for a longer period of time before it becomes legally significant. Yet at some stage, even occasional visits by parent [sic] cannot prevent a finding that the parent has so removed herself from active participation in a child's life such that abandonment has occurred.
Id. at 1226(¶ 30).
¶ 24. Pursuant to the mandates of Hill, a court must find some evidence of voluntary abandonment of parental responsibilities in order to find constructive abandonment. While Hill provides guidance as to what evidence must exist in order to make a finding of constructive abandonment, the present case is factually distinguishable from Hill. In Hill, the natural mother waited eleven years before filing any motion seeking custody of her daughter. Id. at 1222(¶ 6). In this case, only three years had passed from the time that Michael moved to Mississippi to the time that Regina filed her motion to set aside the custody orders. In the meantime, the evidence shows that Regina actually sought custody of Michael. Regina alleges that she did not have proper notice, nor the financial ability, to hire a competent attorney, nor the means to travel to Harrison County to challenge the orders until she filed her complaint in 1999. She also claims that she was unaware that the Packs had been granted a guardianship order. Regina testified that she traveled to Long Beach to look for Michael four times each year from 1996 to 1999, for a total of twelve times. The Packs testified that Regina came to Long Beach only twice, and they admitted that they filed trespassing charges against Regina both times she came to their house. She testified that she was unable to make more frequent trips, because she was working a low-wage job and living in Ohio. Such actions are inconsistent with a finding, based on the standard of clear and convincing evidence, that Regina voluntarily abandoned Michael.
¶ 25. The chancellor also relied on Grant v. Martin, 757 So.2d 264 (Miss.2000), a case which ostensibly bears similarities to the present case. In Grant, the natural parents had voluntarily given custody of their three children to the father's parents. After the parents divorced, they agreed that the grandparents would continue to retain custody. Two years later, the natural mother remarried and requested that her children be returned to her. The Mississippi Supreme Court adopted a new standard and held that a natural parent cannot rely on the natural parent presumption when he or she voluntarily relinquishes custody of a minor child through a court of competent jurisdiction. Id. at 266(¶ 10).
¶ 26. Grant is inapplicable to the present case. In Grant, the evidence was uncontradicted that both parents voluntarily relinquished custody of their children to the paternal grandparents. In the present case, Regina argues that she never voluntarily relinquished custody of Michael. Moreover, the 1996 order changing custody granted custody to James; it did not grant custody to the Packs. For these reasons, the natural parent presumption in favor of Regina should apply.
¶ 27. There is no indication that the chancellor applied the correct standard of clear and convincing evidence in his finding that Regina constructively abandoned her son. The chancellor also applied the incorrect standard in finding constructive abandonment when he made no findings as to whether Regina abandoned her parental responsibilities voluntarily. Therefore, we must reverse and remand this issue to the chancery court.

*423 III. WHETHER THE COURT ERRED IN REFUSING TO ALLOW REGINA TO APPEAL IN FORMA PAUPERIS

¶ 28. Regina filed a motion to appeal her action in forma pauperis and requested the transcript on a pauper's affidavit, which the chancellor denied. Regina claims in her brief that she is able to appeal only because her attorney has advanced the filing fee for this appeal and has agreed to wait for the money owed to him. It is a well-settled rule of law that there is no right to appeal in forma pauperis in a civil action, unless a fundamental right is at issue. Nelson v. Bank of Mississippi, 498 So.2d 365, 366 (Miss.1986).
¶ 29. In M.L.B v. S.L.J., 519 U.S. 102, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996), an indigent mother sought an in forma pauperis grant of the trial transcript so she could appeal the termination of her parental rights. The United States Supreme Court granted her request, stating that such a "case, involving the State's authority to sever permanently a parent-child bond, demands the close consideration the Court has long required when a family association so undeniably important is at stake." Id. at 116-17, 117 S.Ct. 555. "Choices about marriage, family life, and the upbringing of children are among associational rights this Court has ranked as `of basic importance in our society,' rights sheltered by the Fourteenth Amendment against the State's unwarranted usurpation, disregard, or disrespect." Id. at 116, 117 S.Ct. 555 (citations omitted).
¶ 30. The present case involves a custody dispute; no parental rights were terminated. The chancellor found that custody matters do not fall within the narrow class of cases that would give a litigant the right to proceed in forma pauperis. Indeed, the United States Supreme Court in M.L.B. explicitly held that most domestic relations matters, including custody, do not involve fundamental rights that would guarantee an attorney. It noted that parental status termination decrees are "apart from mine run civil actions, even from other domestic relations matters such as divorce, paternity, and child custody" Id. at 127, 117 S.Ct. 555.
¶ 31. Regina argues that she should be granted in forma pauperis status because she has been denied the right to make many of the choices that most parents make, such as the right to decide where Michael should live, where he should go to school, and what sports he should play. She believes that the chancellor's grant of sole legal and physical custody to the Packs terminates a significant portion of her parental rights, which she claims allows her an in forma pauperis appeal. Regina cites In re T.A.P., 742 So.2d 1095 (Miss.1999) for the proposition that an appellant can proceed in forma pauperis when there is no termination of parental rights but the minor child is given to a third party. However, in T.A.P., unlike the present case, the family court denied both custody and visitation rights of the natural mother. The Mississippi Supreme Court found that the denial of both custody and visitation "effectively terminated" her parental rights. Id. at 1100(¶ 19).
¶ 32. We are unable to find that the chancellor's granting of sole legal and physical custody to the Packs constitutes the termination of a fundamental right that would merit an in forma pauperis appeal. The loss of custody does not sever the parent-child bond. M.L.B., 519 U.S. at 121, 117 S.Ct. 555. In the present case, the chancellor granted Regina liberal visitation rights and allowed Regina liberal telephone contact, e-mail and written correspondence with Michael. The chancellor held that "the child has a right to love both parties and that neither should interfere with that relationship." The chancellor *424 endeavored to maintain the parent-child bond between Regina and Michael. For this reason, we do not find that the chancellor's decision affected the fundamental right cited in M.L.B., namely the permanent severance of the relationship between the natural parent and her child. We affirm the trial court's ruling.

IV. WHETHER THE COURT ABUSED ITS DISCRETION FOR REFUSING TO AWARD REGINA'S ATTORNEY'S FEES BECAUSE OF FRAUD COMMITTED UPON THE COURT
¶ 33. Regina argues that the Packs committed fraud for claiming that they were unable to find Regina when they pursued their 1997 order granting general guardianship. The Packs stated under oath, "The natural mother of said minor child is Regina Schonewitz whose Post Office Address and Street Address is unknown to petitioners after diligent search and inquiry." At trial, when they were asked about what they had done to locate Regina, neither Sandra nor Douglas Pack could produce any evidence of a diligent search and inquiry. Regina argues that these statements amount to fraud and that the chancellor was in error for not awarding attorney's fees due to this fraud.
¶ 34. Regina never argued the issue of whether the Packs committed fraud to the chancellor, and she raises the issue for the first time on appeal. Issues that were not presented to the trial court cannot be raised before this Court. Under Mississippi law, "an appellant is not entitled to raise a new issue on appeal, since to do so prevents the trial court from having the opportunity to address the alleged error." West v. West, 891 So.2d 203, 214 (Miss.2004) (quoting Crowe v. Smith, 603 So.2d 301, 305 (Miss.1992)). We decline to address this issue.
¶ 35. THE JUDGMENT OF THE CHANCERY COURT OF HARRISON COUNTY IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANT AND THE APPELLEES.
KING, C.J., BRIDGES AND LEE, P.JJ., GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY. MYERS, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.