17 So.3d 610 (2009)
M.H., Appellant
v.
D.A. and A.A., Appellees.
No. 2008-CA-00205-COA.
Court of Appeals of Mississippi.
August 25, 2009.
*611 John R. Reeves, John Justin King, attorneys for appellant.
Paul E. Rogers, Jackson, attorney for appellees.
Before KING, C.J., BARNES and ISHEE, JJ.
ISHEE, J., for the Court.
¶ 1. Following a hearing on December 20, 2007, the Chancery Court of the First Judicial District of Hinds County granted *612 custody of Marshall,[1] a minor child, to his maternal grandparents, Donald and Annette. The chancery court also terminated the parental rights of Marshall's father, Mark. Mark appeals from the judgment of custody, alleging the following points of error:
I. Whether the petition to terminate Mark's parental rights was properly before the chancery court.
II. Whether the chancery court erred in terminating Mark's parental rights.
III. Whether the chancery court erred in awarding custody of Marshall to his maternal grandparents.
Donald and Annette also allege in their brief that Mark's appeal should be dismissed for lack of jurisdiction because of a pending post-trial motion on which the chancery court had yet to rule. Finding no error, we affirm.

FACTS AND PROCEDURAL HISTORY
¶ 2. Mark and April, Marshall's mother, were divorced in 1999. During their marriage, their only child was Marshall, who was born on October 3, 1997. April later had another child, Tim, who was born on June 23, 2003, and whose natural father was Owen. Following Mark and April's divorce, Mark had no contact with his son. At the time of this trial, Mark was remarried and was living in Niagra Falls, New York. Based on Mark's absence, April petitioned the chancery court for termination of Mark's parental rights. April alleged that she was unaware of Mark's location at that time because he was a non-resident of Mississippi. Process was effected via notice in the Clarion Ledger, and on October 22, 2002, the chancery court entered an order terminating Mark's parental rights.
¶ 3. April, who was the natural mother of both children, died on April 27, 2007. On May 30, 2007, Mark filed a motion to set aside the judgment terminating his parental rights as to Marshall. Pursuant to a temporary judgment, Owen, who had been the children's primary caregiver following April's death, was allowed to retain custody of both Marshall and Tim until the chancery court held a hearing on the issue of custody. Donald and Annette, who lived in New Orleans, Louisiana, were Marshall's maternal grandparents. The chancery court awarded them grandparents' visitation rights, and they later filed a petition for guardianship of the two children. Carolyn Gramlich was appointed guardian ad litem (GAL) for the purpose of making a recommendation concerning the paternity and guardianship of the children, including whether the order terminating Mark's parental rights should be set aside. Her report recommended that the judgment terminating Mark's parental rights should be set aside based on improper service of process and improper notice, and that further consideration should be made concerning Marshall's best interest.
¶ 4. The chancery court followed the GAL's recommendation and set aside the judgment terminating Mark's parental rights, and the court instructed the GAL to continue her investigation regarding what would be in Marshall's best interest. On October 19, 2007, Donald and Annette filed a new petition seeking to terminate Mark's parental rights. Upon investigation, the GAL recommended that Marshall be placed in the custody and care of his grandparents and that the chancery court terminate Mark's parental rights on the ground of statutory abandonment.
*613 ¶ 5. On January 7, 2008, the chancery court entered a judgment granting Donald and Annette legal and physical custody of Marshall. However, the order did not specify whether the chancery court terminated Mark's parental rights. Donald and Annette filed a motion for clarification, requesting that the chancery court address the termination of parental rights; however, an amended judgment also failed to clarify the issue. Accordingly, Donald and Annette filed a second motion for clarification. Mark appealed the chancery court's judgment, and the grandparents' motion was never ruled upon. Upon order of this Court, the chancery court entered a second amended judgment disposing of Donald and Annette's motion in which the court specifically ordered Mark's parental rights to be terminated.

STANDARD OF REVIEW
¶ 6. "Appellate review in a case to terminate parental rights is limited to reviewing the chancellor's findings under the manifest error/substantial credible evidence test." A.C.W. v. J.C.W., 957 So.2d 1042, 1044(¶ 10) (Miss.Ct.App.2007) (citing S.N.C. v. J.R.D., 755 So.2d 1077, 1081(¶ 11) (Miss.2000)). "On appeal, the court will ask whether there was `credible proof sufficient for the trier of fact to find abandonment by a parent based on clear and convincing evidence.'" Id. However, we will review questions of law under a de novo standard. Id.

DISCUSSION

I. Appellate Jurisdiction
¶ 7. We begin by addressing Donald and Annette's issue of jurisdiction. Donald and Annette argue on appeal that this Court lacks jurisdiction due to a pending post-trial motion in the chancery court. They argue that, under Mississippi Rule of Appellate Procedure 4(d), the appeal should be suspended until the chancery court rules on the outstanding post-trial motion. Rule 4(d) provides, in part, as follows:
If any party files a timely motion of a type specified immediately below the time for appeal for all parties runs from the entry of the order disposing of the last such motion outstanding. This provision applies to a timely motion under the Mississippi Rules of Civil Procedure: (1) for judgment under Rule 50(b); (2) under Rule 52(b) to amend or make additional findings of fact, whether or not granting the motion would alter the judgment[;] (3) under Rule 59 to alter or amend the judgment[;] (4) under Rule 59 for a new trial[;] or (5) for relief under Rule 60 if the motion is filed no later than 10 days after the entry of judgment. A notice of appeal filed after announcement or entry of the judgment but before disposition of any of the above motions is ineffective to appeal from the judgment or order, or part thereof, specified in the notice of appeal, until the entry of the order disposing of the last such motion outstanding. Notwithstanding the provisions of Appellate Rule 3(c), a valid notice of appeal is effective to appeal from an order disposing of any of the above motions.
The comments to Rule 4(d) further explain the situation when an appeal is filed while a post-trial motion remains pending:
Rules 4(d) and 4(e) now provide that a notice of appeal filed before the disposition of a specified post[-]trial motion will become effective upon disposition of the motion. A notice filed before the filing of one of the specified motions or after the filing of a motion but before its disposition is, in effect, suspended until the motion's disposition, whereupon the previously filed notice effectively places jurisdiction in the Supreme Court. *614 Still[,] ordinarily the filing of a notice of appeal should come after the disposition of these motions. An appeal should not be noticed and docketed in the Supreme Court while it is still possible that the appealing party may obtain relief in the trial court.
M.R.A.P. 4 cmt.
¶ 8. Upon order of this Court, the chancery court has since ruled on Donald and Annette's outstanding post-trial motion. Accordingly, this issue is moot, and the present appeal is properly before this Court.

II. Service of Rule 81(d) Summons
¶ 9. Mark's first issue on appeal questions whether he was properly served with Donald and Annette's motion to terminate his parental rights. Mark claims that he objected to the alleged improper service at the hearing that took place on December 20, 2007. According to Mark, he never received service of process, which is required under Mississippi Rule of Civil Procedure 81(d). Absent proper service under Rule 81(d), Mark argues that the judgment against him is void and that the chancery court's failure to follow the proper procedure constitutes reversible error.
¶ 10. Donald and Annette respond that Mark cannot now complain about the chancery court exercising jurisdiction over him when he was a party to the various ongoing disputes all along. They argue that Mark was the first to raise the issue of paternity in his motion to set aside the October 22, 2002, judgment, and they also dispute Mark's claim that he objected to the Rule 81 service of process at the December 20, 2007, hearing. According to Donald and Annette, Mark was on notice as to the issue of the termination of his parental rights because he initially filed the motion seeking custody of Marshall and requesting that the earlier termination of his parental rights be set aside. Furthermore, they point out that all the parties, including Mark, entered appearances by filing pleadings in response to Owen's petition for custody. They claim that no party ever issued or served any process in this case. Accordingly, Donald and Annette conclude that Mark cannot now complain about the chancery court's decision to exercise jurisdiction over him.
¶ 11. Mississippi Rule of Civil Procedure 81(d) provides, in part, that:
(1) The following actions and matters shall be triable 30 days after completion of service of process in any manner other than by publication or 30 days after the first publication where process is by publication, to-wit: ... termination of parental rights....
....
(5) Upon the filing of any action or matter listed in subparagraphs (1) and (2) above, summons shall issue commanding the defendant or respondent to appear and defend at a time and place, either in term time or vacation, at which the same shall be heard.
¶ 12. At the December 20, 2007, hearing the following exchange took place, which Mark cites as his objection to the improper service of process:
Mr. Rogers: I would also note for the record that [Mark] has not filed any written responses to the Motion for Termination of Parental Rights and Guardianship which was filed on behalf of the [Donald and Annette], was filed on their behalf on October 27, 2007.
Mr. Reeves: My response is that's a Rule 81 matter. They didn't serve my client.
The Court: All right.
Mr. Reeves: The process is defective.

*615 The Court: All right. There's a procedural issue out there that I'll just have to take under advisement and resolve.
Upon order of this Court, on July 10, 2009, the chancery court entered an order regarding this issue that it had taken under advisement, and the court denied the Rule 81 motion. The chancery court entered an order finding that there was insufficient evidence to find that it lacked Rule 81 jurisdiction.
¶ 13. In In re Adoption of Minor Child, 931 So.2d 566, 574-75 (¶¶ 17-21) (Miss. 2006), the supreme court discussed the issue of jurisdiction in a case where the defendant did not receive proper service of process under Rule 81. In that case, the supreme court found that any objection to the plaintiff's failure to strictly comply with Rule 81 was waived when: the defendant's attorney made an appearance without objecting to jurisdiction; the defendant agreed to various pretrial motions and orders setting the case for trial; and the defendant introduced testimony on her behalf. Id. at 575(¶ 21). The supreme court relied on Isom v. Jernigan, 840 So.2d 104 (Miss.2003) in its analysis, which dealt with service of process for a contempt proceeding. In Isom, the supreme court found that a mother had waived any complaints as to the deficiency of the Rule 81 service "by her attorney making a general appearance, failing to challenge jurisdiction or the sufficiency of service of process and introducing testimony on her behalf." Adoption of Minor Child, 931 So.2d at 575(¶ 19).
¶ 14. In another contempt matter, Chasez v. Chasez, 935 So.2d 1058, 1062(¶ 12) (Miss.Ct.App.2005) (citing Schustz v. Buccaneer, Inc., 850 So.2d 209, 213(¶ 15) (Miss.Ct.App.2003)), this Court held that "the right to contest the court's jurisdiction based upon a claimed problem with service may be lost after making an appearance in the case if the issues related to jurisdiction are not raised at the first opportunity." In finding no merit to Frederick Chasez's claim of lack of notice, this Court also noted that the matter had been set for a time when Chasez had voluntarily come into court "asking the chancellor to reconsider his refusal to hold in abeyance child support payments." Id. at (¶ 15).
¶ 15. In the present case, Mark initially came before the chancery court when, on May 30, 2007, he filed to have the initial termination of parental rights set aside. On June 29, 2007, he also filed a motion to set aside the temporary order granting Owen custody of both minor children. In the chancery court's judgment setting aside the initial termination of Mark's parental rights as to Marshall, the court ordered the GAL to continue her investigation into Marshall's best interest and ordered both children to remain in Owen's custody. In addition to Mark's motions, the chancery court was also considering Owen's claim for custody of the two minor children, with which Mark was also involved regarding Marshall, and a petition for visitation filed by Donald and Annette. While these proceedings were ongoing, Donald and Annette filed the motion for termination of Mark's parental rights and for guardianship of Marshall, which was mailed to Mark's attorney. Furthermore, at the hearing, the issue of notice was only mentioned during a discussion of the order in which the parties would put on their evidence. Mark neither objected to the improper notice nor requested that the claim be dismissed.
¶ 16. Regarding Rule 81's requirements for service of process, this Court has stated that "all civil procedural rules are to be applied so as to `secure the just, speedy, and inexpensive determination of every action.'" Bailey v. Fischer, 946 So.2d 404, 408-09(¶ 15) (Miss.Ct.App.2006) (quoting *616 M.R.C.P. 1). In Bailey, this Court specifically withdrew the conclusion it reached in Floyd v. Floyd, 870 So.2d 677, 680(¶ 13) (Miss.Ct.App.2004), that "Rule 81 requires strict compliance." Bailey, 946 So.2d at 408(¶ 15).
¶ 17. Based on the unique facts of this case, we find that Mark waived any issue as to defective service of the grandparents' claim. Furthermore, Mark was already before the chancery court concerning a number of other matters when Donald and Annette filed their motion. The chancery court was considering the matters of custody, visitation, and Mark's parental rights. Therefore, the chancery court had already exercised jurisdiction over Mark. Additionally, while the notice served on behalf of Donald and Annette may not have strictly complied with Rule 81, Mark was put on notice, and he did appear at the hearing and presented evidence on his behalf. We find that this issue is procedurally barred and without merit.

III. Termination of Mark's Parental Rights
¶ 18. Mark next argues that the chancery court was in error by terminating his parental rights. He argues that he made continued efforts throughout the years to contact Marshall; therefore, he did not abandon his son. He claims that he sent Marshall cards and gifts, and Mark says his attempts to call Marshall on the telephone were thwarted because April would not let him speak to his son. Furthermore, Mark notes the strong presumption in favor of a parent retaining custody of his natural child, and he argues that Donald and Annette failed to overcome that presumption. He concludes that the chancery court's order terminating his parental rights was not supported by clear and convincing evidence and should be reversed.
¶ 19. "Before a [s]tate may sever completely and irrevocably the rights of parents in their natural child, due process requires that the [s]tate support its allegations by at least clear and convincing evidence." Santosky v. Kramer, 455 U.S. 745, 747-48, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). "[T]he chancellor must find grounds for termination by clear and convincing evidence in order to terminate the parental rights of a parent regarding the child." A.C.W., 957 So.2d at 1045(¶ 12) (citing Miss.Code Ann. § 93-15-109 (Rev. 2004)). "Abandonment is defined as `any conduct by a parent which evinces a settled purpose to forego all duties and relinquish all parental claims to the child.'" S.N.C., 755 So.2d at 1081(¶ 11) (quoting Natural Mother v. Paternal Aunt, 583 So.2d 614, 618 (Miss.1991)). "The test is an objective one: whether under the totality of the circumstances, be they single or multiple, the natural parent has manifested his severance of all ties with the child." Ethredge v. Yawn, 605 So.2d 761, 764 (Miss.1992). If a petitioner successfully demonstrates by clear and convincing evidence that the objecting natural parent has abandoned their child, then the court will consider the best interest of the child. J.C.N.F. v. Stone County Dep't of Human Servs., 996 So.2d 762, 766(¶ 12) (Miss.2008) (quoting Petit v. Holifield, 443 So.2d 874, 877 (Miss.1984)).
¶ 20. Under Mississippi Code Annotated section 93-15-103(3)(b) (Rev.2004), one ground for terminating parental rights is that "[a] parent has made no contact with a child under the age of three (3) for six (6) months or a child three (3) years of age or older for a period of one (1) year[.]" According to the language of section 93-15-103(3), any one factor can justify the termination of parental rights. See also J.C.N.F., 996 So.2d at 766(¶ 13) (stating *617 that any one factor is sufficient to terminate parental rights).
¶ 21. The chancellor found that Mark had not seen Marshall since 1999 and had not paid any child support since 2002. This finding is supported by the record, and we find nothing to indicate an abuse of the chancery court's discretion in making that determination. The chancellor's finding that Mark had made no contact with Marshall for a period of one year satisfies the statutory requirement under section 93-15-103(3)(b) to terminate Mark's parental rights. With the first prong satisfied, we must determine whether the chancellor erred in determining that the best interest of the child favored termination of parental rights. J.C.N.F., 996 So.2d at 767(¶ 17) (citing Holifield, 443 So.2d at 877). The chancellor considered Marshall's best interest by considering the Albright factors and awarding custody to his grandparents. That best-interest analysis is what Mark takes issue with in his last allegation of error; therefore, we will address it below.

IV. The Award of Custody to the Grandparents
¶ 22. Lastly, Mark argues that it was error for the chancery court to award custody of Marshall to Donald and Annette. Mark claims the chancery court erred by applying the Albright factors to determine Marshall's best interest, when they are normally applied to determine which of two parents should receive custody. Instead, he argues that the chancery court should have applied the test cited in Grant v. Martin, 757 So.2d 264, 265(¶ 5) (Miss.2000). In support of his argument, Mark points to the grandparents' abuse of alcohol and to the fact that Marshall did not know his grandparents very well. While Donald and Annette agree that the present case is not normally one in which an Albright analysis is employed, they argue that the chancery court's determination under Albright was correct. In response to Mark's claim, they argue that the test in Martin merely lists circumstances which, if proved by clear and convincing evidence, will allow a third party to overcome the natural-parent presumption.
¶ 23. We agree that Martin is inapplicable to the case at hand. In Martin, a parent's parental rights were not terminated. The supreme court was merely presented with the issue of determining the natural parents' rights to modify custody after they had voluntarily relinquished custody to a third party. Id. at 266(¶ 10). In the present case, after determining that Mark's parental rights should be terminated pursuant to section 93-15-103(3)(b), the chancellor went on to consider the best interest of the child as required by Holifield. The chancellor relied on the Albright factors as a means of determining the child's best interest. We find no error with the chancellor's decision to apply the Albright factors because his analysis thoroughly took into account whether it was in the child's best interest for Mark's parental rights to be terminated.
¶ 24. The chancellor made the following findings regarding the Albright factors: (1) Marshall's age, health, and sex did not favor either party; (2) Owen had been responsible for Marshall's care since April's death, but Donald and Annette assisted whenever possible; (3) Mark had never raised a child and did not seem to have a nurturing personality; (4) both parties were financially capable of providing for Marshall; (5) physical and mental health and age favored Mark, in part because he was young and in good health, and because of Donald's and Annette's alcohol problems; (6) Marshall had no emotional ties or relationship with Mark, but he had a strong bond with Donald and Annette; (7) the court noted Donald's and Annette's alcohol problems and concerns with Mark's sexual orientation, but found *618 that moral fitness favored neither party; (8) Marshall was intelligent and was a good student at the school where he was enrolled; (9) Marshall was not old enough to express a preference; (10) Mark had a suitable home environment in New York, but the court found that stability of the home environment favored Donald and Annette; (11) the chancellor noted the "close and loving sibling relationship" between Marshall and his half-brother, Tim, and found that moving to New York with a father that Marshall did not know would erode that relationship. After considering Albright, the chancellor found that Marshall's best interest would be for Donald and Annette to have primary custody of him.
¶ 25. The chancellor thoroughly considered Marshall's best interest after determining that it was proper to terminate Mark's parental rights pursuant to section 93-15-103(3)(b). We find that the chancellor's consideration pursuant to Albright satisfied the second prong of the test to terminate parental rights. J.C.N.F., 996 So.2d at 769(¶ 20) (citing Holifield, 443 So.2d at 877). Therefore, the chancellor applied the proper legal standard, and we find no abuse of discretion or manifest error in her ruling. Accordingly, this issue is without merit.
¶ 26. THE JUDGMENT OF THE CHANCERY COURT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. IRVING, J., NOT PARTICIPATING.
NOTES
[1] To protect the minor child's privacy in this case to terminate parental rights, fictitious names have been substituted for the parties' actual names.