LEE, C.J.,
for the Court:
¶ 1. This appeal arises from a modification of child custody. Finding that the chancellor failed to make specific findings regarding each of the applicable Albright factors, we reverse and remand.
FACTS AND PROCEDURAL HISTORY
¶ 2. On August 10, 2007, Audrey Wright[1] gave birth to Jennifer Wright. Prior to giving birth, Audrey approached Elena and Steve Smith about adoption. Audrey did not believe she could support the baby financially, so she decided to give the baby to the Smiths. Audrey testified that because the Smiths were family, she thought she would be able to see Jennifer. Audrey later changed her mind, and instead of allowing the Smiths to adopt Jennifer, she agreed to a guardianship. On August 22, 2007, the parties privately executed a document entitled “authorization for guardianship of minor.”
¶ 3. It is unclear when Jennifer began to live with the Smiths. Elena testified that Audrey delivered Jennifer to her and her husband as soon as she was discharged from the hospital. Hailey Wright, Audrey’s mother, testified that because Audrey was breastfeeding, she stayed with the Smiths for a time. Hailey also testified that for the first year of Jennifer’s life, Jennifer stayed with her during the day when Audrey was at work or school, and with Audrey or the Smiths in the evening. Audrey testified that for the first few weeks of Jennifer’s life, she was either with Jennifer at the Smiths’ home or with Jennifer at Hailey’s home. According to Audrey, when Jennifer was almost one year old, she allowed Jennifer to live with the Smiths. Audrey testified that she had enjoyed unfettered access to her daughter up until then, and she continued to visit Jennifer in the Smiths’ home until communication started to break down shortly thereafter. Hailey testified that the Smiths stopped bringing Jennifer to her house in the mornings. Audrey and Hai-ley testified that the Smiths stopped answering their phone calls and returning their messages. They testified that when they went to the Smith home to see Jennifer, no one answered the door. On one occasion, Audrey sought the help of the Jackson Police Department and had a uniformed police officer escort her to the Smith home. The Smiths still did not come to the door. When baby clothes or other items were left at the Smith home for Jennifer, they were returned. Hailey testified that when she did talk to Elena, she was told they did not need anything from. Audrey or Hailey.
¶ 4. On March 18, 2009, the Smiths filed their first petition for adoption and termi *739 nation of parental rights alleging that Jennifer had been in their custody since birth and that Audrey had abandoned Jennifer. In Audrey’s answer and counterclaim, she denied the allegations and requested that custody be returned to her. A temporary order was entered on May 22, 2009, appointing a guardian ad litem and providing for Audrey’s visitation. On September 16, 2009, the Smiths and Audrey entered into an agreed judgment of guardianship in lieu of adoption. The agreed judgment gave the Smiths custody of Jennifer, and granted Audrey visitation to be agreed upon by the parties. If the parties could not agree, Audrey could visit Jennifer in the Smiths’ home every other Saturday. The Smiths failed to abide by the agreed judgment.
¶ 5. According to the guardian ad litem, Audrey was keeping notes regarding her visits with Jennifer, including photographs, videos, and her call log. When the guardian ad litem compared Audrey’s notes with the Smiths’ notes, she found that there were times when Audrey attempted to exercise visitation that the Smiths had listed as a no-show. The guardian ad litem found that there were also times when Audrey would appear at the Smiths’ home in an attempt to exercise visitation, but no one would come to the door. Audrey would then call the Smiths, but no one would answer. The guardian ad litem noted that Audrey often left messages to inform the Smiths whether she intended to exercise visitation or if she was running late.
¶6. On December 8, 2010, the Smiths filed their second petition for adoption and termination of parental rights, alleging that Audrey abandoned Jennifer. Again, Audrey denied the allegations and sought to cite the Smiths for contempt and terminate the guardianship. Audrey alleged that the Smiths refused to allow her to visit Jennifer eight times between November 2009 and February 2011. The Smiths refused to answer her phone calls on those dates and when Audrey went to the Smith home, no one came to the door. On October 5, 2011, in another attempt to resolve the parties’ differences, the Smiths and Audrey entered into an agreed order that preserved the guardianship and outlined a more detailed visitation schedule that would take place outside the Smith home. The agreed order also provided for the exchange of Jennifer to take place at a specific location at specific times, and stated that the purpose for visitation was “to enhance the relationship between Audrey and [Jennifer].” All communication regarding visitation was to be by text message or email.
¶ 7. Two months later, the Smiths filed their third petition for adoption and termination of parental rights, alleging that Audrey had abandoned Jennifer. Again, Audrey responded and filed a petition to cite the Smiths for contempt and terminate the guardianship. According to Audrey, she had only been able to exercise visitation twice between October 8, 2011, and February 25, 2012. Audrey also claimed that the Smiths had failed to show up at the appointed time and place to exchange Jennifer, and except for one occasion, the Smiths did not call or text Audrey to inform her they would not be there. Audrey collected receipts for purchases made at the exchange location documenting her presence there at the appointed time. On two occasions, she took a date- and timestamped photograph and date-stamped video to document her presence. At trial, Elena either admitted that she was not at the exchange location at the appointed time and place, could not recall whether she was there, or claimed that she had photographs documenting her presence and that Audrey had failed to show. Elena testified that the photographs she had taken documenting her presence at the *740 exchange location were taken with an instant camera and were developed just days before she testified at trial. She testified that she had written the dates on the back of each photograph because they did not have a time or date stamp. Regarding her absence from the exchange location, Elena testified that she did not bring Jennifer because Audrey had not said that she wanted to exercise visitation on those dates. The agreed order, however, did not condition visitation on communication between the parties. It required communication only when Audrey was unable to visit or Jennifer was sick.
¶ 8. On August 9, 2013, the chancellor issued an opinion terminating the guardianship and awarding custody to Audrey. After reciting the case history and much of what has been included here, the chancellor found:
The [Smiths] have taken good care [of Jennifer’s] physical needs and are in a superior position to provide for her care in the future; however, the test in these circumstances is not who can best provide for the child. The [Smiths’] burden in this cause has been to show that [Audrey] abandoned [Jennifer] or otherwise to satisfy the statutory requirements entitling them to have the Court terminate her rights as a natural parent. They made such allegations in their pleadings but [Steve] admitted in his testimony that they were not true. In fact, the [Smiths] repeatedly asserted in [e]ourt documents that [Audrey] had abandoned [Jennifer], or had not had contact with her, knowing full well' that [Audrey] had done everything she could do, short of committing a crime by invading their home, to obtain her child. The [c]ourt finds that the [Smiths’] evidence falls dramatically short of meeting their burden. At a very young age, with little resources and even less understanding of her rights or of the way most effectively to go about being reunited with her daughter, [Audrey] has demonstrated a tenacious determination not to abandon [Jennifer]. The [guardian [a]d [l]item testified that the [Smiths’] failure to abide by the [o]rders of the [c]ourt regarding [Jennifer’s] contact and visitation with [Audrey] was not in the child’s best interest. It is so very unfortunate that the [Smiths] apparently failed to understand the steep burden that they would have to meet and so ham-handedly attempted to exclude [Audrey] from [Jennifer’s] life. It is also very sad to think that they came to love [Jennifer] as their own child, and no doubt caused the child to come to love them in like manner, but thought that such fact and desire alone could overcome the powerful bond of a natural mother’s love and could entitle them in the eyes of the law to take a child not their own.... [Audrey] is now employed as a correctional officer at the Central Mississippi Correctional Facility, has improved her circumstances and is in a much better position to care for her child than she was when this litigation began. She has, in fact, successfully and uninterruptedly cared for one other natural child who is just a year or so older than [Jennifer].
The [c]ourt, therefore, finds that the proof fails to show that the [Smiths] are entitled to any relief on their [p]etition to [t]erminate the [p]arental [r]ights of Audrey and for [Jennifer’s] [a]doption and their request for such relief is hereby DENIED. The [c]ourt further finds that [Audrey] is a fit and proper person in whom to repose the physical and legal custody of [Jennifer]; that there is no justifiable impediment to her resuming her role as physical and legal custodian of her natural child; that the evidence supports [Audrey’s] [p]etition to [t]ermi- *741 nate [g]uardianship of [Jennifer] and that her request for such relief is hereby GRANTED; and that said child’s custody should be returned to her forthwith.
(Emphasis in original). The Smiths filed an unsuccessful motion for reconsideration. On October 2, 2013, the chancellor entered his order for payment of the guardian ad litem fees. The Smiths were ordered to pay the unpaid balance of the guardian ad litem fees, and reimburse Audrey for past fees paid.
¶ 9. Aggrieved, the Smiths appeal, asserting that: (1) the chancellor applied the wrong legal standard in modifying custody in favor of Audrey; and (2) because it is in the best interest of Jennifer to remain with the Smiths, the chancellor erred in requiring them to pay all of the guardian ad litem fees.
STANDARD OF REVIEW
¶ 10. The standard of review in child-custody cases is very limited, and in order to reverse the chancellor’s findings, the chancellor must be manifestly wrong or clearly erroneous, or have applied an erroneous legal standard. Hensarling v. Hensarling, 824 So.2d 583, 587 (¶ 7) (Miss.2002). Questions of law are reviewed de novo. Zeman v. Stanford, 789 So.2d 798, 802 (¶ 12) (Miss.2001).
DISCUSSION
¶ 11. “Our law clearly has a strong presumption that a natural parent’s right to custody is superior to that of third parties, whether grandparents or others.” Grant v. Martin, 757 So.2d 264, 266 (¶ 9) (Miss.2000). This presumption is forfeited, however, when a parent voluntarily relinquishes custody of a minor child through a court of competent jurisdiction. Id. at (¶ 10). “A natural parent may reclaim custody of the child only upon showing by clear and convincing evidence that the change in custody is in the best interest of the child.” Id. When the Mississippi Supreme Court adopted this standard, it reasoned:
Because stability in the lives of children is of such great importance, we have carefully weighed the impact of establishing an exception, or a new standard, for such instances. While we do not want to discourage the voluntary relinquishment of custody in dire circumstances where a parent, for whatever reason, is truly unable to provide the care and stability a child needs, neither do we want to encourage ... irresponsible parent[s] to relinquish their child’s custody to another for convenience sake, and then be able to come back into the child’s life years later and simply claim the natural[-]parents’ presumption as it stands today.
Id. at 266 (¶ 9). In determining the best interest of the child, the court considers the following factors: (1) age, health, and sex of the child; (2) a determination of the parent that has had the continuity of care prior to the separation; (3) which has the best parenting skills and which has the willingness and capacity to provide primary child care; (4) the employment of the parent and responsibilities of that employment; (5) physical and mental health and age of the parents; (6) emotional ties of parent and child; (7) moral fitness of the parents; (8) the home, school, and community record of the child; (9) the preference of the child at the age sufficient to express a preference by law; (10) stability of home environment and employment of each parent and other factors relevant to the parent-child relationship. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983).
¶ 12. The supreme court has also held that “[a] determination of child custody will be held erroneous where a chancellor *742 is not thorough in his discussion, factor by factor, of Albright.” Powell v. Ayars, 792 So.2d 240, 249 (¶33) (Miss.2001). In Powell, “the chancellor stated that he examined the case under Albright, but he did not make an on-the-record determination of each applicable factor.” Id. at 243 (¶ 5). Refusing to “attempt to correspond the Albright factors to the evidence found within the record,” the supreme court reversed the chancellor’s judgment and remanded the case so the chancellor could make specific findings regarding each of the applicable Albright factors.' Id. at 244-45 (¶¶8-11). Similarly, in Hayes v. Rounds, 658 So.2d 863, 865 (Miss.1995), the supreme court reversed a chancellor’s judgment and remanded for specific findings regarding the applicable Albright factors where the chancellor explicitly acknowledged that the Albright factors applied to the case, but it was not clear whether the chancellor had properly applied them. The supreme court stated, “While we cannot say that the chancellor’s conclusion is so lacking in evidentia-ry support as to be manifest error, in the absence of specific findings we cannot affirm with confidence that the best result has been reached.” Id. at 866.
¶ 13. The Smiths argue that because Audrey had voluntarily relinquished custody of Jennifer through a court of competent jurisdiction, she forfeited the natural-parent presumption, and that pursuant to Grant, the chancellor erred in failing to, conduct an Albright analysis. Audrey argues that Grant does not apply because she did not voluntarily relinquish custody of Jennifer. Audrey’s argument is without merit. Audrey consented to the guardianship not once, but twice. First, she agreed to the judgment in September 2009 that formally established the Smiths’ guardianship of Jennifer. In October 2011, Audrey entered into the agreed order that preserved the guardianship and modified Audrey’s visitation to better enhance her relationship with Jennifer.
¶ 14. Audrey argues that the agreed judgment and the agreed order are voidable because they were obtained via the Smiths’ false promises to allow visitation. Audrey raises this issue for the first time on appeal; however, up until now, she has had no reason to raise it.
¶ 15. Having found that Audrey voluntarily relinquished custody of Jennifer to the Smiths through a court of competent jurisdiction, we find that Audrey forfeited the natural-parent presumption, and that the chancellor erred in failing to make specific findings regarding the applicable Albright factors. While the chancellor mentioned “the powerful bond of a natural mother’s love,” the chancellor did not rely on the natural-parent presumption in making his custody determination. Rather, the chancellor placed the burden on the Smiths to show that Audrey had abandoned Jennifer, or otherwise satisfy some other statutory ground for the termination of Audrey’s parental rights. Finding that the Smiths had not met this burden, he terminated the guardianship and returned Jennifer to Audrey. This, however, was the wrong standard because Audrey had voluntarily relinquished custody of Jennifer through a court of competent jurisdiction, which required the chancellor to conduct an on-the-record Albright analysis.
¶ 16. In his opinion, the chancellor fo-. cused a great deal of attention on the Smiths’ refusal to allow Audrey to exercise her court-ordered visitation, which undoubtedly reflected poorly on the Smiths. And while the chancellor’s opinion arguably discussed several of the Albright factors, it did so unintentionally and did not. address all of the factors applicable in this case. Although the chancellor may have had Jennifer’s best interest in mind when *743 he made his decision, we reverse the chancellor’s judgment and remand this matter for the chancellor to support his decision with an on-the-record Albright analysis.
¶ 17. The second issue on appeal hinges on the first. The Smiths argue that the chancellor erred in requiring them to pay the total amount of the guardian ad litem fees. “Our rules of procedure treat guardian ad litem fees as court costs to be awarded against the non-prevailing party.” Miss. Dep’t of Human Servs. v. Murr, 797 So.2d 818, 821 (¶ 9) (Miss.2000) (citations omitted). The Smiths argue that because the chancellor erred in modifying custody in favor of Audrey, it was error to assess them with the guardian ad litem fees. Because we reverse and remand for the chancellor to address the Albright factors, we reverse and remand on the issue of the guardian ad litem fees. The responsibility for such fees is to be determined after the chancellor has made his final decision.
¶ 18. THE JUDGMENT OF THE HINDS COUNTY CHANCERY COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. JAMES, J., CONCURS IN PART.

. To protect the parties' identities, fictitious names have been used for all names in the opinion.